Hitchcock v. City of St. Louis et al.

HENRY HITCHCOCK, Respondent, *v.* CITY OF ST. LOUIS *et al.*, Appellants.

1. *St. Louis, city of — City council, donation by — St. Ann's orphan asylum — Members of city council, trustees.*—None of the grants of corporate powers in the charter of the city of St. Louis authorize the city council thereof to appropriate or give away the public moneys as pure donations to any mere private institution not under the control of the city and having no connection with it. The council may exercise implied or incidental powers whenever they are necessary to carry out those clearly expressed. But such donation is not germain or incident to any power granted. The members of the city council are trustees clothed with a trust, not for the corporation as such, but for the public who have confided the authority to them. And the diversion of the money of the tax-payers for any purpose other than that which is expressed in the charter, is a perversion of the trust and an excess of authority.

*Appeal from St. Louis Circuit Court.*

*Garesche & Mead,* for appellants.

I. The appropriation was within the scope of the charter. (Sess. Acts 1867, art. I, pp. 51, 66, § 50.) The liberal interpretation given by the Supreme Court in Chambers v. City of St. Louis, 29 Mo. 579, to the words " for maintaining the peace, good government and welfare of the city," leaves no doubt of the validity of this appropriation. Foundlings are human beings. When yet unborn, *en ventre sa mere,* fœtal life is by the law shielded from the abortionist, from the person who, without the intent to produce abortion, does violence to a pregnant woman. The law gives to the unborn child the same hereditary rights as if born alive, subject only to the condition that it be born alive. If such be the tender solicitude for life unborn, how much stronger the appeal to its protection for those who are the most helpless portion of the community—the foundling whose crime is the stain of the lust of which it is begotten. Surely such a class, possessed of immortal souls, deserve pity—are entitled to protection in a large and prosperous city like St. Louis. A hospital for this class, to protect their lives, is a necessity. As to the interpretation of municipal powers we cite Bentz v. City of St. Louis, 11 Mo. 61 ; Palmyra v. Morton, 25 Mo. 595 ; Independence v.

Moore, 32 Mo. 396; Ruggles v. Collier, 43 Mo. 365; Fuller *et al.* v. Inhabitants of Groton, 11 Gray, Mass., 340; Mayor of Philadelphia v. Elliott, 3 Rawle, 170; Vidal v. Girard's Ex'rs, 2 How. 189; Collins v. City of Rochester, 12 Barb., S. C., 562; Beroujohn v. Mayor of Mobile, 27 Ala. 60; State of New York v. City of Buffalo, 2 Hill, N. Y., 434; Reynolds v. Albany, 8 Barb., S. C., 597; Mayor of New York v. Williams, 15 N. Y. 502; Miller v. Milwaukee, 14 Wis. 642; State v. Merrill, 37 Me. 332; Willard v. Newburyport, 12 Pick. 231; Spalding v. Lowell, 23 Pick. 75.

II. If the appropriation be of doubtful legality, injunction does not lie. (Reynolds v. Mayor of Albany, 8 Barb., S. C., 61; McCallis v. Chattanooga, 3 Head, Tenn., 321; Weber v. City of St. Louis, 44 Mo. 450.)

III. The word "donation" was an act of prudence to avoid what would otherwise be a liability under St. Louis Hospital Ass'n v. Williams, 15 Mo. 595. The answer disclosed that when the council first visited the institution they found fifty children in it, picked up out of the streets where they had been abandoned to destruction and carried to the asylum by the police, because the only receptacle for them. The city having no asylum of its own could thus secure the use of a private institution. (Aull v. City of Lexington, 18 Mo. 403; Dapenport v. Hallowell, 10 Me. 322.) In statutes, as in deeds, the real intention is to prevail over words. (Dwarr. Stat. 75, 176, 178; Siegrist v. City of St. Louis, 46 Mo. 594; Jackson v. Meredith, 47 Mo. 150; Jones v. City of St. Louis, *id.* 494; Franklin v. P. S. L. N., 30 Penn. 522; Davis v. New York, 1 Duer, 497.) To the objection that if sustained such appropriations may lead to abuse, we cite 29 Mo. 589.

*H. Hitchcock, pro se.*

I. A municipal corporation must strictly conform to the charter, a statute giving it power, or its acts will be void. (Ruggles v. Collier, 43 Mo. 353, and cases cited; 2 Kent's Com. 361; Brady v. New York, 7 Abb. Pr. 245; Lowber v. New York, *id.* 252; Hodges v. Buffalo, 2 Denio, 112; Hood v. Lynn, 1 Allen, 105.)

II. The charter of the city of St. Louis gave it no power to bestow " donations " on individuals. The money raised by taxation is still a trust fund in the hands of the authorities, who cannot apply it except as expressly authorized by law. (Brady v. New York, 7 Abb. Pr. 245 ; Lowber v. New York, *id.* 252.)

III. This was in terms a " donation," and therefore unlawful and a breach of trust. But it could not be supported, even had a contract been made, the charter imposing no duty nor containing any express or implied authority for the city to support foundling hospitals. ( Hood v. Lynn, 1 Allen, 105 ; New London v. Brainard, 22 Conn. 552 ; Hodges · v. Buffalo, 2 Denio, 112.)

IV. Even had the charter required the city to take care of foundlings, the city cannot be made liable to a third person for discharging that duty except upon proof of prior notice to the city, and failure by it to fulfill the same. (Seagraves v. Alton, 13 Ill. 366, 371 ; Cincinnati v. Ogden, 5 Ham., Ohio, 27.)

V. The alleged power on the part of the city to use money raised by taxation for general purposes in "donations" or gratuities for private and wholly impossible charities, cannot be implied (as argued) from the decision of this court in reference to the Mullanphy trust fund (29 Mo. 579). Power to accept one trust does not imply power to abuse another. Nor does such consequence follow from the charter provisions authorizing the city to accept bequests, etc., for charitable purposes. Nor does the case of St. Louis Hospital, etc., v. St. Louis, 15 Mo. 592, apply here. That was under an express contract, and the question of power was not raised or decided. Here the question is of power to squander public moneys in mere gratuities. To admit such a claim would be to sap the foundations of public morality and safety. (Lowber v. New York, 7 Abb. Pr. 253 ; Brady v. New York, *id.* 245.)

VI. Corporate powers by implication are not favored, and will not be admitted unless really necessary or incidental to execution of powers expressly granted. (Reynolds v. Albany, 8 Barb., S. C., 597 ; 2 Kent's Com. 361 ; Ruggles v. Collier, 43 Mo. 353 ; City v. Clemens, *id.* 395, 404.)

VII. Any tax-payer may prevent such a breach of trust as here complained of, by injunction. (Hooper v. Ely, 46 Mo. 505; New London v. Brainard, 22 Conn. 552; Davis v. New York, 1 Duer, 498, 499.)

WAGNER, Judge, delivered the opinion of the court.

This suit was brought to test the validity of an ordinance passed by the city council of the city of St. Louis, by which the sum of $1,500 was appropriated out of the general revenue and ordered to be paid to the mother superior of St. Ann's Orphan Asylum and Widows' Home, as a donation from the city toward the maintenance and support of that institution. The court below decided that the ordinance was invalid, and that the council possessed no power to make the appropriation, and from that decision this appeal is prosecuted. The general grant of corporate powers contained in the charter incorporating the city gives it authority to "purchase, receive and hold property, real and personal, within said city, and also hold the like beyond the limits of the city, to be used for the burial of the dead of the city; also for the erection of waterworks to supply the city with water; also for the establishment of a hospital or hospitals for the reception of persons infected with contagious and other diseases; also for a poor-house or poor-houses, work-house, house of correction, or for any other purpose; and may sell, lease, or dispose of property for the benefit of the city; may receive bequests, gifts and donations of all kinds of property, within and without the city, for charitable and other purposes, and may do all acts necessary to carry out the purposes of such bequests, gifts and donations, with power to sell, lease, dispose of and manage the same." In the article defining the legislative powers of the city council, the council is invested with power " to make all such ordinances, not inconsistent with the laws of this State, as may be expedient, maintaining the peace, good government and welfare of the city, and its trade, commerce and manufactures." Do any of the above enumerated grants authorize the city council to appropriate or give away the public moneys as pure donations or gratuities? We do not think the donation can be upheld on the ground that it is germain or inci-

dent to any power granted. The council may exercise implied or incidental powers wherever they are necessary to carry out or execute those clearly expressed. And where the corporate authorities have a discretion, courts will not ordinarily interfere. But when they act they must show some grant or power to authorize their action. The city council, in the discharge of their duties, do not act for themselves, but for the public. They are trustees clothed with a trust, not for the corporation as such, but for the citizens and the public who have confided the authority to them. The charter is the power of attorney which defines and limits the objects and powers with which they are intrusted. The diversion of the money of the tax-payers for any purpose other than that which is expressed in the charter, is a perversion of the trust and an excess of authority. That there is no express power in the charter conferring authority to make donations, gifts or gratuities, is too clear to require any argument.

The donee is a mere private institution, not under the control of the city and having no connection with it. If the tax-payers' money can be taken and given to it, it may be also to any other private corporation, or it may be distributed gratuitously to individuals. It is clear that the charter confers no such authority, and we think, therefore, that the judgment should be affirmed. The other judges concur.