## CURTIS's Adm'r vs. WHIPPLE and others.

*Limits of taxing power — Taxation for benefit of private corporation.*

1. The Jefferson Liberal Institute (incorporated by chapter 516, Private and Local Laws of 1866) is essentially a *private* educational institution, in which the town of Jefferson or its inhabitants, as such, have no interest or power of control; and acts empowering the town to raise by taxation of its inhabitants a sum to be paid over to the treasurer of said institution for its benefit (ch. 381, Private and Local Laws of 1867, and ch. 9, Private and Local Laws of 1868), are invalid.
2. The incidental benefits resulting to the people of a town from the location therein of any private business or institution, are no ground for the exercise of the taxing power in aid thereof.

PAINE, J., assents to the decision, mainly on the ground that the constitutional provisions for *public* schools of every grade, to be supported by taxation, seem to be *exclusive.*

APPEAL from the Circuit Court for *Jefferson* County.

By an act of the legislature, approved April 6, 1867 (published as ch. 381, Private and Local Laws of 1867), the town of Jefferson was authorized to raise by tax $5,000, to aid in the erection of buildings for the "Jefferson Liberal Institute," in said town, in case the majority of the votes cast upon that question at a special town meeting to be held on the 14th of May, 1867, should be in favor of said tax. The electors having decided affirmatively, the tax was accordingly assessed upon the

taxable property of the town in December, 1867, by direction of the supervisors of said town, and the defendant *Whipple*, as town treasurer, proceeded to collect the same; and *Cyrus Curtis* having refused to pay so much of said tax as was assessed against his property, *Whipple* seized and sold certain personal property of said *Curtis*, to raise the amount. Thereupon *Curtis* brought this action for the wrongful taking and conversion of said property; and he made one *Copeland* and one *Grimm* defendants with *Whipple*, as supervisors of said town. *Whipple*, by his answer, set up the facts above stated, and his warrant; and his co-defendants answered by a general denial. After the commencement of the action, *Cyrus Curtis* died, and the suit was continued in the name of his administrator. The court rendered judgment for the plaintiff; and defendants appealed.

*Gerrit T. Thorn*, for appellants, contended that the "Jefferson Liberal Institute" was an eleemosynary corporation (A. & A. on Corp. 29; *Asylum v. Phœnix Bank*, 4 Conn. 172); that the purposes for which it was established, and to which, by the terms of the charter, all the funds at its disposal must be devoted, rendered its maintenance an object of general interest to the inhabitants of the town; that the trustees, though elected by the stockholders, were under the supervision of the courts, which might, by *mandamus* or otherwise, compel a faithful and fair discharge of their duty for the public welfare (*State ex rel. Graham v. Chamber of Commerce*, 20 Wis. 63; *Nourse v. Merriam*, 8 Cush. 11; *People ex rel. Bartlett v. Medical School*, 32 N. Y. 187, and 24 Barb. 572; *Fuller v. Plainfield Academic School*, 6 Conn. 532; *Comm. v. Penn. Beneficial Institute*, 2 S. & R. 141); and that, therefore, it was a proper object for the exercise of the taxing power. *Soens v. City of Racine*, 10 Wis. 280; *Merrick v. Inhabitants of Amherst*, 12 Allen, 500; *Kirby v. Shaw*, 7 Harris, 258, and 19 Pa. St. 260; *Thomas v. Leland*, 24 Wend. 67; *Sharpless v.*

*Mayor, etc.*, 21 Pa. St. 147; *Town of Guilford v. Supervisors of Chenango*, 18 Barb. 615, and 13 N. Y. 143; *People v. Mitchel*, 25 Barb. 208, and 35 N. Y. 551; *People v. Mayor*, 4 N. Y. 419; *Shaw v. Dennis*, 5 Gilm. 405; 8 Leigh, 120. Under section 3, article 11 of the state constitution, it is for the legislature to judge when a town shall loan its credit. *Weeks v. City of Milwaukee*, 10 Wis. 242. It has been held in many well-adjudicated cases in other states, that what should and what should not be a public tax is to be determined by the legislature (*Booth v. Woodbury*, 32 Conn. 128; *Speer v. Blumsville*, 50 Pa. St. 159); and under the decision of this court in *Brodhead v. City of Milwaukee*, 19 Wis. 652, to justify a court in holding this tax unconstitutional, it must appear that the "Institute" will not, in any degree, subserve the common interest or well-being of the town of Jefferson.

*Enos & Hall*, for respondent:

1. Article X of the constitution provides for a system of education, and for levying an annual tax for its support and maintenance. *Expressio unius est exclusio alterius*. In *McCabe v. Mazzuchelli*, 13 Wis. 480, it is held that sections 7 and 8 of this article prohibit the legislature from conferring power upon any person, other than the school land commissioners, to execute a conveyance of school lands. See also *State v. Hastings*, 10 Wis. 525. On the same principle of construction, the other sections of the same article prohibit the legislature from imposing a tax for educational purposes other than those specified in the article. 2. This tax is for a merely private purpose, and therefore void. The "Jefferson Liberal Institute" (Pr. Laws of 1866, p. 1261), is a private corporation, controlled exclusively by the stockholders, through the board of trustees. The town of Jefferson is not a stockholder, and has no voice in its management. If this is a valid tax, the legislature may take a portion of each tax payer's property in any town,

and give it to any individual or corporation that will establish a school or manufacturing establishment in the town.

DIXON, C. J.   The counsel for the plaintiff correctly state the effect of the act of incorporation (Pr. and Local Laws of 1866, ch. 516), when they say that the "Jefferson Liberal Institute," for the benefit of which the taxes in question were attempted to be assessed and collected, is essentially a private educational institution, controlled exclusively by the stockholders, through a board of trustees.   The town of Jefferson is not a stockholder, and has no voice in its management.   The tax payers in the town, as such, are not stockholders, and have no privileges in the institute that are not common to all the people of this or any other state.   The trustees may exclude any or all of the citizens of the town from the institution.   The money, when collected, is to be paid to the treasurer of the institute, and the town is not secured the right to see or know that it is expended for the purposes for which it was collected.   Under these circumstances we feel no doubt in saying that the act (Pr. and Local Laws of 1867, ch. 381), and its amendment (Pr. and Local Laws of 1868, ch. 9), under which the proceedings to levy and collect the supposed tax are attempted to be justified, are unconstitutional and void. It strikes us, "at the first blush," that this is not the levy and collection of money for public purposes, as clearly as if the institute were not an incorporated body, but a mere association of private individuals resolved upon the establishment of a like institution.   If it were such an institution, or a grammar or classical school, or a seminary built up and established by individual enterprise, as by persons engaged in the profession of teaching, or by others, and owned and controlled by those contributing toward it, and the emoluments belonging to them, we apprehend that no one would con-

tend that the people of Jefferson might be taxed for the
purpose of donating the money to it.   The fact that it
is an institution incorporated by act of the legislature
does not change its character in this respect.   It is but
a most frivolous pretext for giving to a corporation, where
there is no certain and definite personal responsibility,
money exacted from the tax payers, which a just and
honorable man engaged in the same business would
hesitate to receive though paid without opposition, and
to enforce the payment of which, against the will of the
tax payers, he would never think of resorting to coercive
measures, provided the same were lawful.   It can no
more be supported by taxation than if it were unin-
corporated, or a private school or seminary of the kind
above supposed.   Nor will the location of the institu-
tion at Jefferson, and the incidental benefits which may
thereby arise to the people of the town, sustain the tax.
That is not the kind of public benefit and interest which
will authorize a resort to the power of taxation.   Such
benefits accrue to the people of all communities from
the exercise in their midst of any useful trade or em-
ployment, and the argument, pursued to its logical
result, would prove that compulsory payment or taxa-
tion might be made use of for the purpose of building
up and sustaining every such trade or employment,
though carried on by private persons for private ends,
or the purposes of mere individual gain and emolument.
That there exists in the state no power to tax for such
purposes, is a proposition too plain to admit of contro-
versy.   Such a power would be obviously incompatible
with the genius and institutions of a free people; and
the practice of all liberal governments, as well as all
judicial authority, is against it.   If we turn to the cases
where taxation has been sustained as in pursuance of
the power, we shall find in every one of them that there
was some direct advantage accruing to the public from
the outlay, either by its being the owner or part owner

of the property or thing to be created or obtained with the money, or the party immediately interested in and benefited by the work to be performed, the same being matters of public concern; or because the proceeds of the tax were to be expended in defraying the legitimate expenses of government, and in promoting the peace, good order and welfare of society. Any direct public benefit or interest of this nature, no matter how slight, as distinguished from those public benefits or interests incidentally arising from the employment or business of private individuals or corporations, will undoubtedly sustain a tax. In thus endeavoring to define how the public must be beneficially interested in order to justify the raising of money by taxation in cases like the present, we, of course, do not intend to include all the purposes for which money may be so raised. Taxes may be levied and collected for charitable purposes, but these constitute a peculiar ground for the exercise of the power, which does not exist here. So, claims founded in equity and justice in the largest sense, and in gratitude, will support a tax. Such claims, however, and we think all others where taxation is proper, except claims founded in charity, may be referred to the general principle above spoken of, of public interest in or benefits received by the transactions out of which the claims arose. And these principles will be found to have been always recognized and acted upon by this court, whenever the question has arisen. *Knowlton v. Supervisors, etc.*, 9 Wis. 410; *Soens v. Racine*, 10 id. 271; *Brodhead v. Milwaukee*, 19 id. 624; *Hasbrouck v. Milwaukee*, 13 id. 37.

These remarks sufficiently answer the argument of counsel for the defendants, when he says that this tax should be sustained because special taxation in the towns and cities where the state normal schools have been located, is or has been sustained, for the purpose of raising funds to procure suitable grounds and to erect

proper buildings for those schools. Conceding such taxation to be regular and valid, still the difference between the two cases is so marked and plain as to require no effort to distinguish them. The state normal schools are public, not private, schools, and the grounds, buildings, fixtures and apparatus belong to the public, and not to private individuals or corporations. Hence, if taxes have been levied and collected to aid in the construction of buildings or the purchase of grounds, it was not taxation for merely private purposes, as is the case here.

In conclusion, we refer to the *Philadelphia Association, etc., v. Wood* (39 Pa. St. 73) as a decision sustaining the principles enunciated in this opinion.

COLE, J.   I fully concur in the opinion of the chief justice, above given.

PAINE, J.   I assent to the decision of the court, though I have done so with very great doubt indeed as to its correctness.   It is conceded by all that a tax must be for a public, and not a private, purpose.   If, therefore, the legislature attempts to take money from the people by legal compulsion, for a merely private purpose, that is not a tax, according to the essential meaning of the word ; and, therefore, such a law is not, strictly speaking, unconstitutional, as being prohibited by any positive provision of the constitution, but is void, for the reason that it is beyond the scope of legislation.

But, inasmuch as the public has at least a general and indirect interest in the success of all private enterprise, and in the promotion of individual prosperity, it becomes extremely difficult to draw a line of demarkation that shall show clearly the kind and degree of benefit which the public must derive from any enterprise, in order to sustain an exercise of the taxing power in its favor. Some of the courts have used very broad language indeed upon this subject.   Thus, in *Booth v. The Town of Wood-*

*bury*, 32 Conn. 118, the supreme court of that state says: "In the first place, if it be conceded that it is not competent for the legislative power to make a gift of the common property, or of a sum of money to be raised by taxation, where no possible public benefit, direct or indirect, can be derived therefrom, such exercise of the legislative power must be of an extraordinary character to justify the interference of the judiciary, and that is not this case. Second, if there be the least possibility that making the gift will be promotive in any degree of the public welfare, it becomes a question of policy, and not of natural justice; and the determination of the legislature is conclusive. And such is this case. Such gifts to unfortunate classes of society, as the indigent blind, the deaf and dumb, or insane, *or grants to particular colleges or schools*, or grants of pensions, swords or other mementoes for past services, involving the general good indirectly and in slight degree, are frequently made, and never questioned."

This language was approved by this court in *Brodhead v. Milwaukee*, 19 Wis. 624. This court there said: "To justify the court in arresting the proceedings and declaring the tax void, the absence of all possible public interest in the purposes for which the funds are raised must be clear and palpable—so clear and palpable as to be perceptible by every mind at the first blush."

If such language were to be applied without qualification, it would most certainly sustain the tax in this case, and also in many other cases where, in the opinion of the chief justice, it is claimed to be very clear that a tax could not be sustained. Thus, there can be no doubt that, under certain circumstances, it may be of very great public interest and importance that particular kinds of manufactures, or branches of commerce, should be encouraged and aided. It has been the practice of all governments, on occasion, to do this. And a protective tariff, which has been so fruitful a theme of political discussion

in this country, as well as in others, is nothing more nor less than taxation of the people in an indirect manner for the direct benefit of private manufacturers. But it is a maxim that what cannot be done directly cannot be done indirectly. And therefore, unless the judiciary would have power to declare a protective tariff void, as beyond the scope of legislative power, it seems difficult to see why the legislature might not grant direct aid in favor of private manufacturing establishments, if, in its judgment, the public interest would be thereby promoted. That it might be so promoted in very many conceivable cases, is clear. And it would require great hardihood to say in such cases, or to say in this case, that it is "perceptible by every mind" that "the absence of all possible public interest in the purposes for which the funds are raised is clear and palpable."

But, notwithstanding the broad language used upon this subject by this court and others, I still think that there is a limitatation to the taxing power in this direction, and that the mere indirect interest which the community at large has in the prosperity of each of its individual members is not sufficient to sustain an exercise of the taxing power for the purpose of giving gratuities to such individuals. There should be some more immediate and direct benefit.

But the promotion of education would certainly come even within this rule. It has always been, and still is, justly regarded as an object of the highest public interest, and worthy of the aid and anxious solicitude of every civilized government. It has been the common practice to aid institutions of learning by direct donations from the government. This is shown by the extract already quoted from the decision of the supreme court of Connecticut. It is also shown by the statement of the supreme court of Massachusetts in *Merrick v. Amherst*, 12 Allen, 500. In that case the validity of a law authorizing the people of Amherst to raise a tax to

aid the agricultural college which was to be located there, was sustained. That was similar to a local tax in aid of one of our normal schools, and is, I concede, distinguishable from the present case. But the constitution of Massachusetts requires that "all moneys raised by taxation in the towns and cities for the support of public schools, etc., shall be applied to, and expended on, no other schools than those which are conducted according to law, under the authority and superintendence of the authorities of the town or city in which the money is to be expended." And this provision was relied on as invalidating the law in question. But the court held that it was applicable only to the moneys raised in support of the public or free schools, and that it was inapplicable to the higher seminaries of learning, such as incorporated academies and colleges. And after giving the history of the provision, at the close of the opinion, they say : "But aside from this, we should be slow to come to the conclusion that the amendment was designed to take from the legislature the power which has always been exercised from the earliest periods of our history, of making grants of land and money to incorporated academies and colleges." And it appeared from what had previously been said, that those academies and colleges were not a part of the public schools of the state.

This same practice of aiding schools is recognized in our constitution, and was undoubtedly the occasion of the adoption of the provision at the close of section 18 of the declaration of rights, which prohibits any money from being drawn from the treasury for the benefit of religious societies, "or religious or theological seminaries."

In view of these considerations, I have had great difficulty in coming to the conclusion that the judiciary has any right to interfere with the operation of a law of this character. And I have finally done so chiefly for the following reasons. Our constitution provides for a gen-

eral system of public free schools, for normal schools, incorporated academies, and a state university. These are all to be supported largely by taxation. And from the general and extensive character of the provisions upon this subject, I think there is some implication that this system was designed to be exclusive, and to furnish the only public instruction which was to be supported by taxation. This, together with the fact that a line must be drawn somewhere, separating those purposes which are sufficiently public to sustain a tax, from those which are not, and the extreme difficulty of drawing such a line anywhere, so that the purposes immediately on one side shall be clearly distinguishable from those immediately on the other, has led me to assent to the decision classing a school established by private enterprise, and controlled by private persons, as among those private objects to aid which a tax cannot be levied.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.