HOLT & a. v. ANTRIM & a.

In the case of a tax for building a school-house to be leased to an academy corporation for school purposes, as in the case of turnpikes, toll-bridges, and railroads, the test of the public use is not a right of enjoying the property wholly at the public expense, but a common and equal right free from unreasonable discrimination.

The corporation accepting the lease accepts it with the legal construction, and subject to all implied conditions, necessary to give validity to the tax and the lease.

BILL IN EQUITY, by tax-payers in Antrim against that town and the Antrim academy, for an injunction to restrain the defendants from carrying into effect certain votes of the town, passed at the annual meeting, 1884, recited in the bill substantially as follows:

1. That the town build an academy building upon the land donated to the Antrim Academy Association by D. M. Weston, to

cost not exceeding ten thousand dollars, whenever fifteen thousand dollars is given to this association as a permanent fund, and when the trustees of said academy association shall have contracted with responsible parties, with ample sureties, to build and complete said building according to plans and specifications furnished by said trustees.

2. To instruct the selectmen to hire a sum not to exceed ten thousand dollars to build an academy building, when the conditions of the foregoing vote are complied with, said sum to be paid to the trustees.

3. That the committee be chosen by the trustees of the academy, and that they shall have the same powers as though chosen by the town.

These votes were passed under the supposed authority of *c.* 202, *s.* 5, of the Laws of 1883; and the Antrim Academy Corporation was organized under the charter granted by said act. The plaintiffs claim that *s.* 5 of the act is unconstitutional, and that said votes are illegal and unauthorized by any law of the state. The defendants demurred to the bill.

*G. B. French,* for the plaintiffs. Shall the establishment of a private institution of learning in any town, by an individual or corporation, be taken to be a matter of such public nature and interest that the legislature can authorize a town to appropriate the property of its citizens for its encouragement and support, independent of any tuition guaranteed to its citizens, or any compensation or recompense assured? We are content to ask this question, and cite the authorities without comment. *Railroad* v. *Greely,* 17 N. H. 47. 55, 56, 57; *Great Falls Mfg. Co.* v. *Fernald,* 47 N. H. 444, 456; *East Kingston* v. *Towle,* 48 N. H. 57, 59–61; *Orr* v. *Quimby,* 54 N. H. 606, 607; *Perry* v. *Keene,* 56 N. H. 514, 520, 525, 531, 532, 534; *Bowles* v *Landaff,* 59 N. H. 164–166, 169, 174, 190; *Lowell* v. *Boston,* 111 Mass. 454; Cooley Const. Lim. 129.

The votes of the town do not carry out the intent of the act of the legislature (*c.* 202, *s.* 5, Laws of 1883), that the town, after they shall have raised and expended this large sum, for a small town, shall own something which they can preserve and control perpetually on the spot where it is first located. Section 5 reads thus: "And be it enacted, that the town of Antrim are hereby authorized to raise, by loan or taxation, a sum not exceeding ten thousand dollars for the purpose of erecting a school-building, and to give a perpetual lease of the same to said corporation for school purposes without payment of rent." If the erection of school-buildings for a private body by a town is a matter of such public nature that the property of citizens in such town can be taken without compensation, other than the public advantage, and be appropriated to that object, certainly no act ought to be regarded

as constitutional which does not provide some security for those citizens that their money shall not become a prey to the winds; and no votes of a town ought to be regarded as complying with such an act which leave the rights of the citizens so unguarded as do these votes. The act of the legislature points by necessary inference at a permanent piece of property, with the fee-simple in the town, that can be perpetually leased to this association for a " school-building " for " school purposes."

*C. H. Burns,* for the defendants.

BINGHAM, J. Section 5, c. 202, Laws of 1883, authorizing the town of Antrim to raise $10,000, by loan or taxation, " for the purpose of erecting a school-building," and to give a perpetual lease of the same to a corporation called Antrim academy " for school purposes without payment of rent," is to be so construed, if it reasonably may be, as to be consistent with a presumed legislative intent not to give an unconstitutional and void sanction to taxation for a private purpose. *Opinion of the Justices,* 41 N. H. 553, 555; Cooley Const. Lim. 184, 185; 2 Dillon Mun. Corp. (3d ed.), s. 736; Cooley Tax. (2d ed.) 55, 103; *Parkersburg* v. *Brown,* 106 U. S. 487; *Weismer* v. *Douglas,* 64 N. Y. 91, 101, 103.

Local education is a local purpose for which legislative power may be delegated to towns. *State* v. *Hayes,* 61 N. H. 264. The amount of money to be raised for school-houses and other educational purposes is determined, under some restrictions, by municipal corporations. *Sargent* v. *School-District,* 63 N. H. 528, 532, 533. A tax raised for a free public school and a free public schoolhouse is raised for a public purpose, and the purpose is not made private by a mere exaction of tuition. The legislature could require the payment of tuition in the common schools. Land taken for a highway is taken for a public use, whether the use is free, as in ordinary roads and bridges built by towns, or subject to tolls, as in other highways (turnpikes, toll-bridges, ferries, railroads, and canals) constructed by other corporations. Land may be taken for public grist-mills, though toll is to be paid, and for public aqueducts, gas-pipes, and telegraphs, though the water and gas are to be sold, and the transportation of messages is not to be free. In these instances the legal test of the public character of the use is not a right of enjoying the use of the land wholly at the public expense, but a common and equal right, free from unreasonable discrimination. *Perry* v. *Keene,* 56 N. H. 514, 535, 539, 545; Cooley Tax. (2d ed.) 119–124.

When not controlled by the exercise of judicial and executive power, the municipal and official management of free roads, as well as the corporate management of toll-roads, may infringe public rights of use; but as the possibility of such remediable wrong does not prohibit the legislative exercise of the power of eminent domain

for laying out, or the power of taxation for buying and building, such ways, so a possible violation of a public right of using the proposed public school-house in Antrim does not prohibit an appropriation of public money for the acquisition of the right. The common and equal privilege of use will be enforcible by adequate remedies. *McDuffee* v. *Railroad*, 52 N. H. 430, 451. A school-house tax or a highway tax is not invalidated by the possibility that an injunction or other appropriate process of law will be necessary to prevent an illegal use of the house or way, or to maintain the public right of legal use.

The lessee of the proposed school-house will hold it in trust for the public service to which it will be devoted by the statute and the constitution, and the court cannot assume that the trustee's duty will not be promptly, constantly, and thoroughly performed. In the act authorizing the lease there is no evidence of an unconstitutional purpose, and there is no legal presumption of such a purpose on the part of the legislature, the town, or the academy corporation.

A reservation of all rights necessary to make this Antrim appropriation a constitutional expenditure of public money is naturally and reasonably implied. The corporation accepting the lease will accept it with the legal construction, and subject to all the conditions, necessary to give validity to the statute and the lease. They will voluntarily assume every fiduciary obligation required to sustain the enjoyment of the common and equal right essential to the public character of the use for which they, as public servants, will be entrusted with the possession of the building. They will be as firmly bound by the restrictions imposed by the proviso of art. 83, and all other constitutional requirements applicable to their trust, as if every item of their duty, established by the paramount law, were expressly and fully set forth in the lease. Under their supervision the use of the property, conformed to all express and implied conditions, will be public and legal in every sense demanded by the property rights of tax-payers and the educational rights of all entitled to the direct and indirect advantages of the tax.

In *E. Cemetery Association* v. *Beecher*, 53 Conn. 551, a petition for leave to take land for a cemetery by the power of eminent domain was held bad on demurrer because it did not show that there would be a public right of burial in the land. No question of statutory construction was considered. In an act authorizing a right of way to be taken for the road of a turnpike company, the public right of using the road need not be expressly asserted. Laws of 1853, c. 1486; Laws of 1850, c. 2314; Laws of 1870, cc. 62, 63. The legal construction of such an act is not that some public benefit indirectly accruing from a private use of the land is a public use of it, but that by the exercise of the power of eminent domain the public acquire a right of way, subject to the payment of toll to the company who bear the expense that would be borne by the

public if the road were free. An act authorizing an abatement. from the tax of an inhabitant who maintains a watering-trough beside a highway (Laws of 1858, *c.* 2122, G. L., *c.* 57, *s.* 13) need not negative in direct terms his power to exclude from the trough such portion of the travelling public as he chooses. The application of his tax by the public to the maintenance of a watering-trough beside the highway, and the element of public purpose essential to the validity of taxation, sufficiently indicate the public character of the appropriation, and the equal right of those for whom the water is supplied. The public right of using a school-house built by taxation rests in this case on the same natural inference of legislative intention as that which sustains a turnpike or watering-trough act, in which the public right is not expressly declared.

Our constitution does not contain such a prohibition of taxation for the support of other public schools than those under the exclusive superintendence of town authorities as was enforced in *Jenkins* v. *Andover*, 103 Mass. 94. School-money of a town or school-district may be applied to the payment of tuition at an academy in the town not under the superintendence of the town or district (G. L., *c.* 90, *s.* 15), and boards of education may contract with academies for instruction. Laws of 1885, *c.* 80, *s.* 2; *Page* v. *Haverhill Academy*, 63 N. H. 216; *Sargent* v. *School-District*, 63 N. H. 528, 533.

Private contributions added to a public appropriation for building a highway do not make the way private (*Kelley* v. *Kennard*, 60 N. H. 1, Cooley Tax. 139); and private contributions of fuel, board of a teacher, or money lengthening the term of a public school, do not change the character of the school. *Allen* v. *School-District*, 15 Pick. 35; *Chapin* v. *School-District*, 35 N. H. 445; G. L., *c.* 86, *s.* 28; Laws of 1885, *c.* 43, *s.* 7. As the public have the exclusive use of the fund increased by such contributions, and of a right of way taken for a turnpike superintended by a corporation whom they appoint instead of the municipal surveyor of highways, so they will have the exclusive use of this Antrim Academy building and the school kept therein, though the building and the school will be superintended by an educational corporation created and selected by them instead of the town board of education. In the use of the building the lessee will have no more private beneficial interest than the municipal school board would have if it were committed to their official care. This construction of the statute, by implication of law made a controlling stipulation of the lease, establishes the absolute and definite personal responsibility of the trustee, and the direct and exclusive nature of the public interest, the want of which was the ground of the decision in *Curtis* v. *Whipple*, 24 Wis. 350—*S. C.*, 1 Am. Rep. 187. The public use contemplated by the legislature was not a mere public benefit incidentally or directly derived from a private school. Whether

the doctrine of *Merrick* v. *Amherst*, 12 Allen 500, 505–507, and other cases of that class (*Gordon* v. *Cornes*, 47 N. Y. 608, *Marks* v. *Trustees*, 37 Ind. 155, *Burr* v. *Carbondale*, 76 Ill 455, *People* v. *McAdams*, 82 Ill. 356, *Hensley* v. *People*, 84 Ill. 544, *Livingston* v. *Darlington*, 101 U. S. 407), is consistent with the law of this state (*Bowles* v. *Landaff*, 59 N. H. 164, 192, *Berlin Mills Co.* v. *Wentworth's Location*, 60 N. H. 156, Cooley Tax. (2d ed.) *c.* 5), is a question not raised by the case. Nothing need be added to what was said in *Amoskeag Mfg. Co.* v. *Head*, 56 N. H. 386, 400, *Amoskeag Mfg. Co.* v. *Head*, 59 N. H. 332, 563, *Amoskeag Mfg. Co.* v. *Worcester*, 60 N. H. 522, or *Company* v. *Fernald*, 47 N. H. 444.

*Demurrer sustained.*

BLODGETT, J., did not sit: the others concurred.