Grafton,  
Dec., 1898.

## STATE *v*. JACKSON.

Under the constitution, justices of the peace and police courts have no authority to impose a fine of more than ten dollars in any prosecution of a criminal nature.

Where it is apparent that the legislature intended to retain a criminal offence within the jurisdiction of justices of the peace, but has prescribed therefor a maximum fine in excess of the penalty such magistrates are constitutionally authorized to impose, the statute is valid to the extent of the constitutional limit.

| | |
|---|---|
| 69 | 511 |
| 70 | 160 |
| d70 | 577 |
| 69 | 511 |
| 72 | 310 |
| 69 | 511 |
| f74 | 513 |
| 74 | 514 |
| j74 | 580 |
| j74 | 590 |
| j74 | 591 |

APPEAL, from a judgment of the police court for the town of Littleton, by which the defendant was adjudged guilty of violating the provisions of *s.* 18, *c.* 264, of the Public Statutes, and sentenced to pay a fine of one dollar and costs.

*George H. Adams*, solicitor, for the state.

*Daniel C. Remich*, for the defendant.

CHASE, J. This is an appeal from a judgment of a police court, by which the defendant was adjudged guilty of violating the provision of the statutes that "no person shall ride through a street or lane, in the compact part of a town, at a swifter pace than at the rate of five miles an hour" (P. S., c. 264, s. 18), and was sentenced to pay a fine of one dollar and the costs of prosecution. The punishment prescribed for the offence is a fine not exceeding twenty dollars, or imprisonment not exceeding six months. P. S., c. 264, s. 20. The statutes give justices of the peace and police courts authority to hear and determine actions of a criminal nature in which the punishment does not exceed a fine of that amount or imprisonment of that duration, or both, subject to a right of appeal to the supreme court by the accused. P. S., c. 248, ss. 3, 7; Ib., c. 252, s. 2. The defendant says that these provisions are void because the legislature had no power under the constitution to give justices of the peace and police courts jurisdiction of offences to which punishment of such magnitude is attached; and that consequently the judgment against him is void. The provision of the constitution relied on is as follows: "No subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers or the law of the land." Bill of Rights, art. 15. The position taken is, that this provision guarantees a person against liability to punishment for an offence involving such consequences unless the state obtains the judgment of his peers that he is guilty, upon a trial according to the course of the common law, and that the trial allowed upon appeal is not such a trial, because, to avail himself of it, he must submit to a prior trial and conviction by another tribunal, — a burden which did not exist at common law. In other words, the defendant says that when the constitution was adopted, a justice of the peace had no such jurisdiction as the statutes above cited give him.

In State v. Gerry, 68 N. H. 495, it was held that a statute giving police courts concurrent jurisdiction with the supreme court, subject to appeal, of criminal cases in which the fine did not exceed $200 and the term of imprisonment did not exceed one year (Laws 1895, c. 117), conflicted with article 15 of the bill of rights, and was void. The grounds of the decision were that, by this article, there was secured to the defendant in all criminal cases a trial by jury of substantially the same character and reached by the same procedure as that which was in use in 1784, when the constitution was formed; that there were at that time two classes of offences, each having a course of procedure peculiar to itself; that the jury trial for offences of the higher class was preceded by an indictment found by a grand jury or an informa-

tion filed by the state's attorney, while that for minor offences could be had only after a previous trial by a justice of the peace, and by claiming an appeal from his decision to a court provided with a jury, entering into a recognizance to enter and prosecute the appeal, and complying therewith; that the latter course of procedure could not be applied to the prosecution of offences of the higher order without impairing the right secured to the accused; and hence that the police court had no jurisdiction in Gerry's case, as the offence with which he was charged was of that order. The line of division between the two classes of offences was not defined, and the question whether an offence punishable by a fine of twenty dollars or an imprisonment of six months, or both, falls within the higher class, was not raised or considered.

In *State* v. *Williams*, 68 N. H. 449, it was conceded by the defendant that the legislature had authority under the constitution to confer jurisdiction upon a justice of the peace or a police court to hear and determine a complaint for a first offence of keeping for sale lager beer and fermented cider in violation of law, which is punishable by a fine of ten dollars.

The present case is the first in which the question of the constitutionality of the general jurisdiction conferred upon justices of the peace and police courts in criminal cases has been raised. A decision of the question requires a consideration of the state of the law on the subject in 1784, when the constitution was formed, and prior and subsequent thereto.

The office of justice of the peace had existed in England for centuries when the emigration to New England took place. Jurisdiction in certain civil and criminal cases of minor importance was conferred upon such officers by their commissions and by acts of parliament. 1 Bl. Com. *349, *et seq.;* 3 Chit. Burn's J. 539, 541, 542, 558, 559. While the New England colonies elected their own rulers, the assistants of the governor, or, as they were generally called, the magistrates, exercised jurisdiction in such cases. If it happened that no assistant resided in a town, a special magistrate for the town was appointed. This was done for Dover, Portsmouth, and Exeter by the Massachusetts authorities, when those towns placed themselves under that jurisdiction in 1641 and 1643. 1 Belk. Hist. 50, 51; 3 Nar. and Crit. Hist. of America by Winsor, 326, *et seq.* In the Revised Laws of the Massachusetts Colony, issued in 1660, the following provisions are found, the first dated 1647–49, and the last 1646: "For easing the charge and incumbrance of courts by smal Causes: It is Ordered by this Court and Authority thereof. That any Magistrate, in the Town where he dwels, may hear and determine by his discretion (not by jury) according to the Laws here established, all causes arising in that County, wherein

the debt, trespas, or damage doth not exceed forty shillings who may send for parties & witnesses, by summons or attachment," etc. "And forasmuch as many times it so falls out that small thefts & other offences of a criminal nature are committed both by English & Indians in towns remote from any prison or other fitt place to which such malefactors may be committed until the next court. It is therefore Ordered that any magistrate, upon Complaint made to him may hear, and upon due proof determine, any such small offences of the aforesaid nature according to the laws here established & give warrant to the constable of that town, where the offender lives to leavy the same: provided the damage or fine exceed not forty shillings: provided also it shall bee lawful for either partie to appeal to the next court to be holden in that Jurisdiction, giving sufficient caution to prosecute the same to effect, at the said court. . . And where the offender hath nothing to satisfy, such magistrate may punish by stocks or whipping, as the cause shall deserve not exceeding ten stripes." Colonial Laws of Massachusetts, 1660 to 1672, published by City of Boston in 1889, *pp.* 127, 132. See, also, Stearns R. A. 462. In 1679, immediately after Charles II discontinued the jurisdiction of Massachusetts in the New Hampshire territory, the general assembly of the Province of New Hampshire enacted, "That Any one of the Council [that is, the council provided for by the King's Commission to President Cutt] may hear & determine such smaller Thefts & pilferings, as exceed not the damage or fine of fforty shillings; or penalty of Stocking or Whipping, not exceeding Ten stripes; or only legal admonition, as he shal see cause; Saving liberty of Appeal to the Delinquent." 1 Laws, *ed.* of Batchellor, editor and compiler of Early Province and State Papers, *p.* 17, *s.* 7. By another enactment this jurisdiction was extended to all criminal cases in which the punishment did not exceed that above mentioned. *Ib.*, *p.* 22, *s.* 24. Although these statutes may have ceased to be operative in consequence of the king's rejection of them (*Ib.*, *pp.* 9, 45), they show the general understanding of the people on the subject. In the king's commission appointing Cranfield lieutenant governor of the province, dated May 9, 1682, he was expressly authorized to "Constitute and appoynte . . . Justices of the pease," among other officers. *Ib.*, *p.* 51. The minutes of the council show that after this justices of the peace were appointed from time to time. See Prov. Laws, Batchellor's ed., *p.* 108. September 20, 1692, Richard Waldron was appointed; and Captain Stileman was appointed for Great Island. 2 Prov. Papers 72. See, also, *Ib.*, *p.* 231. Prior to 1682, Richard Martyn, in issuing summonses and other papers usually pertaining to the office of justice of the peace, attached to his signature the words " of the Council," to designate the capacity in which he

acted; and after that date, the words "justice of the peace." 8 Coll. N. H. Hist. Soc., *pp.* 41, 51, 52, 65, 67, 101, 111; 2 Prov. Papers 72. The statutes also \recognized the existence of justices of the peace by assigning judicial duties to them similar to those that had previously been placed upon magistrates and councilors. By the Cranfield code, so called, it was enacted " that every justice of the peace in the respective Town where he dwells, shall have power hereby to hear & determine any Civil action where the debt or damages exceed not forty shillings," subject to a right of appeal " to the next Court of pleas or to the Governor & Councill." 1 Laws, Batchellor's ed., *p.* 72, *s.* 23. This jurisdiction in civil cases, except cases in which the title of land was concerned, was continued down to the time of the adoption of the constitution and for some time afterward, with the exception of about two years; Laws, *ed.* 1716, *p.* 4; *ed.* 1771, *p.* 5; *ed.* 1792, *p.* 63; *ed.* 1815, *p.* 609, *s.* 1. Between 1785 and 1787 justices of the peace had jurisdiction in actions of debt and trespass where title to land was not concerned and the damages did not exceed ten pounds. Laws *Ed.* 1780, *pp.* 370, 450. This act was regarded as unconstitutional. 2 Belk. Hist. N. H. 356. By one of the amendments to the constitution in 1792, the general court were empowered to give to justices of the peace jurisdiction in civil cases not involving the title to land when the damages demanded should not exceed four pounds. Laws, *ed.* 1797, *p.* 26. Prior to that, there was no special constitutional provision on the subject. The legislature soon exercised the power and increased the limit to four pounds. Laws, *ed.* 1797, *pp.* 63, 466.

In the Provincial Laws, *ed.* 1761, *p.* 1, there is a provision as follows : " That every justice of the peace in this province, is hereby authorized and empower'd, to take cognizance of, hear, try, and determine, any criminal offence against any penal law not exceeding the sum of forty shillings, and to issue all necessary process, and award execution thereon with legal costs; as well as in all other cases where he is, or shall be so authorized by particular laws," the accused having a right to appeal to the next court of general sessions of the peace. Albert H. Hoyt, in a pamphlet entitled Notes, Historical and Bibliographical, on the Laws of New Hampshire, published at Worcester in 1876, says that this collection of laws was the report of a committee previously appointed, of which Meshech Weare was a member, and that it does not appear that it was accepted or acted upon, and he regards it as reasonable to suppose that it did not meet the demands of the assembly. Even if this be so, the proposal and the source from which it came have an important bearing upon the question under consideration. Meshech Weare at that time had been a member of the general assembly of the prov-

ince for several years, and a judge of the superior court of judi-
cature for some thirteen years. The views of such a man in
relation to the limit it was thought advisable to fix for the juris-
diction of justices of the peace in criminal actions have a ten-
dency to show the public opinion on the subject. This seems
to have been the only general provision relating to jurisdiction
in criminal cases prior to 1842, but jurisdiction was specially
conferred in respect to each offence. The following are exam-
ples:

Refusal to take the oaths appointed to be taken instead of the
oaths of allegiance and supremacy: Committal to the common
jail for three months, unless forty shillings was paid down for
the use of the poor, and a recognizance with sufficient sureties
was given for good behavior and appearance at the next quarter
sessions of the peace. Jurisdiction of the matter was given to
two or more justices of the peace appointed for the purpose by
the lieutenant governor. Laws, *ed.* 1771, *c.* 1, *s.* 1.

Violation of the provisions of the " act for the better observa-
tion and keeping the Lord's day " : Fine of twenty shillings, and
restraint of the offender until the fine was satisfied, and if the
offender was unable or refused to satisfy the fine he was to be
put in the cage or set in the stocks, not exceeding three hours.
*Ib., c.* 5 ; *Ib., c.* 110, *s.* 4.

Refusal or neglect to aid a sheriff or constable in the execu-
tion of his office as to criminal matters: Fine not exceeding
twenty shillings, and if the fine was not paid forthwith, the of-
fender was to be imprisoned not exceeding forty-four hours or
set in the stocks not exceeding four hours. *Ib., c.* 9.

Profane swearing and cursing: One shilling, and if not paid
the offender to be set in the stocks not exceeding two hours.
If more than one oath or curse at the same time, the punishment
for each was a fine of two shillings or sitting in the stocks not
exceeding three hours. *Ib., c.* 11, *s.* 1. The fine was afterward
increased to ten shillings. *Ib., c.* 110, *s.* 4. See, also, *c.* 139
and *c.* 3, Temp. Laws.

Drunkenness: Fine of five shillings or sitting in stocks not
exceeding three hours. Second offence : the same fine accom-
panied with a binding over in the sum of ten pounds for good
behavior, and for want of such security commitment to the com-
mon jail until it was furnished. *Ib., c.* 11, *s.* 2.

Stealing, when the damage did not exceed forty shillings :
Forfeiture to the owner of treble the value of the money or arti-
cle stolen, with a fine not exceeding five pounds or whipping not
exceeding twenty stripes. If the offender was unable to make
restitution or to satisfy the treble damages, he was required to
make satisfaction by service, and the prosecutor might dispose
of his services for such term as should be assigned by the justice

before whom the prosecution was. A justice was empowered to hear and determine in respect to the offence, " provided the damage exceed not the sum of forty shillings." *Ib.*, *s.* 3. See, also, *Ib.*, *c.* 48, *s.* 1.

Affrayers, rioters, disturbers or breakers of the peace, and persons going about offensively armed and making threatening speeches : Committal to prison until the offender furnished sureties for his good behavior; also the forfeiture of his arms or weapons. *Ib.*, *c.* 11, *s.* 5.

Striking or smiting another : Fine of twenty shillings or bond for good behavior. *Ib.*, *s.* 5.

Publishing a lie or libel, by a person fourteen years old or upwards, to the defamation or damage of another : Fine of twenty shillings with sureties for good behavior; if the offender was unable to pay fine and costs, he was to be set in the stocks not exceeding three hours, or whipped. The justice was also authorized to restrain or commit the offender until he paid the fine and furnished sureties for his good behavior. *Ib.*, *s.* 6.

Refusal by a grantor to acknowledge his deed : Committal to prison without bail until he should acknowledge the same. *Ib.*, *c.* 12, *s.* 2.

Cutting down " bound mark trees " : Fine of forty shillings. *Ib.*, *c.* 53.

Rogues, beggars, persons using any subtle craft or unlawful games or pretending that they could tell fortunes, common drunkards, common night-walkers, etc. : To be sent to the house of correction to be there kept and (if able) required to work. The master of the house was authorized to punish them by putting fetters or shackles upon them and by moderate whipping not exceeding ten stripes, to be inflicted (unless the warrant of commitment otherwise directed) at their entry, and to abridge their food. *Ib.*, *c.* 61, *ss.* 2, 3; *Ib.*, *c.* 87, *s.* 7.

Assaulting a woman in the fields, streets, or lanes of a town, or defacing her attire or ornaments or attempting the same : Public whipping not exceeding ten stripes, or committal to house of correction for thirty days and furnishing sureties for good behavior. Any two justices of the peace, one to be of the quorum, given jurisdiction of the offence, " in the vacancy of the court of general sessions of the peace." *Ib.*, *c.* 65, *s.* 2.

For not having the letter " A " in open view upon the upper garments by one convicted of and sentenced for adultery : Public whipping not exceeding fifteen stripes. *Ib.*, *c.* 7. See, also, *Ib.*, *c.* 30, *s.* 2.

An act passed January 17, 1777, has an interest in addition to its bearing upon the question under consideration. It is in substance as follows : " Whereas this state, in conjunction with the other United States of America, is now at war with Great Brit-

ain, in defence of all that is dear and sacred to men, and there is but too much reason to fear, that many among ourselves are not only disaffected to the cause, but are daily striving, by every means in their power, to injure it, and ruin this country ": Be it therefore enacted, etc., that " if any Person or Persons within this State, shall in any way whatsoever discourage or attempt to discourage any Person or Persons from enlisting in the American Army, or joining and assisting their Arms, either by Sea or Land, in prosecuting the War aforesaid, or from continuing in such service after being engaged therein, . . . unless the Party accused shall make it appear upon the Trial, that he was not influenced by any motives inconsistent with the Public good, but was a friend and well-wisher to the common cause aforesaid "; or " if any Person or Persons shall publicly and openly speak against the common cause before mentioned or endeavor by any methods, public or private, to disaffect the Minds of others towards it "; or " shall wittingly and willingly make or spread any false news, or reports with intent to deceive any of the Inhabitants or People of this State and to injure the common cause," " such Person or Persons shall be deemed guilty of a Misdemeanor against this State," and upon conviction shall be punished by a fine not exceeding *Forty Shillings* for the first offence and double that sum for each subsequent offence, and shall recognize in the sum of *Ten Pounds,* with two sureties for good behavior, and in default of payment of the fine shall be imprisoned not exceeding six nor less than three months. Justices of the peace were empowered to try offenders under the act, and a right of appeal from their decisions to the sessions of the peace was given. Laws, *ed.* 1780, *pp.* 63, 64, 65.

It will be noticed that by these statutes, with the exception of the last one, the largest fine which a justice was authorized to impose was forty shillings, and the longest definite term of imprisonment was three months, authority being given in certain cases to imprison in the house of correction for an indefinite term; and that by the last statute a justice was authorized to fine not exceeding eighty shillings, or imprison not exceeding six months. Jurisdiction of offences punishable more severely was given to the court of quarter sessions, or some other court having a jury. Such was the state of the law on the subject in 1784, when the constitution was adopted.

In 1781, the Spanish milled dollar reckoned as six shillings, and other silver and gold in proportion, were made legal tender on all contracts made after that time, and for all debts contracted prior to the last day of January, 1777. Laws, *ed.* 1789, *pp.* 185, 187. The constitution provides that, in all cases where sums of money are mentioned in it, " the value thereof shall be computed in silver at six shillings and eight pence per ounce."

Laws, *ed.* 1789, *p.* 30. Const., *art.* 96. It seems from the act of February 12, 1785, that the value of gold at that time was five pounds six shillings eight pence per ounce, or, when compared with silver, as sixteen to one. Laws, *ed.* 1780, *p.* 338; *ed.* 1789, *p.* 187. The money of account was changed from the English system to the decimal or United States system in 1792 (Act of Congress of April 2, 1792, *c.* 16, *s.* 20; Laws, *ed.* 1797, *p.* 267); and the first United States silver dollar was coined in 1794. This dollar contained 371¼ grains of pure silver,— about the same quantity as the Spanish milled dollar. According to the rule of the constitution, forty shillings equaled six ounces of silver,— a quantity sufficient to make seven and three fourths United States silver dollars.

Besides the foregoing evidence, " the practical construction given to the constitution by the men who framed it, and their contemporaries, and their successors inheriting their opinions, is to be considered." *Hale* v. *Everett*, 53 N. H. 9, 150, 171. " For laws are founded, in general, upon the perception of an evil, or a danger, or of a public want, and are often framed with such express reference to it as to leave a latent ambiguity in their expressions, easily solved by those who shared in the perceptions of the framers of the laws, but not apparent to after generations, who have lost, by the lapse of time, that key to the interpretation." *Concord Railroad* v. *Greely*, 17 N. H. 47, 63.

By the act of February 16, 1791, justices of the peace were given jurisdiction of the offences of stealing goods and receiving stolen goods, the value of which did not exceed forty shillings, and were authorized to punish the offender by a fine not exceeding that amount or by whipping not exceeding ten stripes, and, in case of his inability to pay threefold damages, by causing him to make satisfaction by service. Laws, *ed.* 1815, *p.* 330, *s.* 3. June 19, 1812, six dollars and sixty-six cents was substituted for forty shillings, and imprisonment in the common jail not exceeding thirty days for the whipping (Laws, *ed.* 1815, *p.* 325, *s.* 36); and December 18, 1812, the fine was increased to ten dollars. *Ib., p.* 328, *s.* 3.

By the act of December 24, 1799, " for the better observation of the Lord's day," etc., it was provided, among other things, that if a traveler on that day gave a false answer to the selectmen or tythingmen in regard to the reason for his traveling, he should be fined not exceeding thirteen dollars nor less than one dollar, and justices of the peace were given jurisdiction of the offence. Laws, *ed.* 1805, *p.* 292. It will be observed that this was not long after the civil jurisdiction of justices had been increased to four pounds, or thirteen dollars and thirty-three cents,— that having been done in 1794. Laws, *ed.* 1797, *p.* 63.

Justices of the peace were also authorized to punish other

offences as follows : In 1807, for refusing to assist the police officers of Portsmouth in arresting rogues, etc., by a fine of one dollar to ten dollars (Laws, ed. 1815, p. 459, s. 2); in 1808, for threatening a voter or purchasing a vote, by a fine not exceeding ten dollars (Laws, ed. 1811, p. 87); in 1822, for violating the law of the road, by a fine of one dollar to twelve dollars (Laws, ed. 1824, p. 126); in 1828, for being a rogue, vagabond, idle and disorderly person, etc., by imprisonment at hard labor, in the town or county house of correction, not exceeding six months (Laws 1828, c. 45, ss. 3, 4); in 1834, for an assault and battery or breaking the peace, by a fine not exceeding ten dollars (Laws 1834, c. 177); in 1825 and 1838, for disturbing religious meetings, by a fine of three dollars to ten. dollars, or imprisonment not exceeding ninety days, or both.   Laws, ed. 1830, c. 89; Laws 1838, c. 382, s. 2.

Upon the revision of the statutes in 1842, every justice of the peace was " authorized to hear and determine prosecutions and actions of a criminal nature, arising within his county, where the punishment is by fine not exceeding ten dollars "; also prosecutions for assault and battery, and to punish offenders by a fine not exceeding. ten dollars, or imprisonment not exceeding thirty days and recognizance to keep the peace; also prosecutions for offences against the police of towns, and to punish offenders by a fine not exceeding ten dollars or less than one dollar, or by imprisonment not exceeding thirty days or less than five days; and also prosecutions against disorderly persons, and to punish offenders by imprisonment not exceeding six months.   R. S., c. 222, s. 1; Ib., c. 218, s. 1; Ib., c. 113, s. 15; Ib., c. 116, ss. 2, 3. The jurisdiction of offences against the law of the road provided by the act of 1822 was also continued.   R. S., c. 63, s. 2.   Larceny and the offence of receiving stolen goods were divided into two grades, — one relating to money or goods of the amount or value of twenty dollars, and the other to money or goods of a less amount or value; and justices of the peace did not have jurisdiction to punish for either grade.   R. S., c. 215, ss. 13, 14, 15, 16.   Another grade of larceny was created in 1844, — the stealing of goods, etc., of the amount or value of ten dollars, and justices were authorized to punish offenders by imprisonment not exceeding ninety days, or fine not exceeding ten dollars, and by requiring the offender to pay the owner of the property stolen treble its value, less the value of the part returned.   Laws 1844, c. 150; Laws 1847, c. 502.   This was practically a re-enactment of the law of 1812, with an increase of the term of imprisonment from thirty to ninety days.

These provisions continued in force until the enactment of the General Statutes in 1867.   Jurisdiction in criminal cases was not increased in the meantime, unless the authority given justices to

commit juvenile and female offenders to the house of reformation is to be regarded as an increase. Laws 1858, c. 2087, s. 1. A consideration of the foregoing evidence leads to the conclusion that the line of separation established by the Revised Statutes between small or minor offences for which offenders might be tried in the first instance without a jury, and offences of a higher character or degree for which offenders were entitled to an unincumbered jury trial, was not materially different from that recognized in 1784. Prior to that time, the maximum punishment prescribed for minor offences was not uniform. Fines varied from one shilling or less to eighty shillings, although forty shillings was generally the highest limit. Ten dollars is less nominally than the largest of these sums, and ten United States silver dollars contained but little more silver than the quantity required to measure forty shillings under the rule of the constitution. The purchasing power of gold and silver was greater then than it was soon afterward, because of their scarcity. In 1786, the legislature found it necessary to encourage the importation of gold and silver coins by remitting duties to inhabitants of the state who imported such coins in their vessels. Laws, ed. 1789, p. 198. It would take a farm laborer twelve days in the summer season to earn forty shillings at the price (three shillings four pence a day) fixed for such labor by the act of January 18, 1777. Laws, ed. 1780, p. 69. In like manner, the physical punishment which might be administered by justices varied from imprisonment for a few hours, or six months, or an indefinite term, to whipping or sitting in the stocks. It is impossible to determine what term of imprisonment would be an exact equivalent for the pain and disgrace occasioned by twenty stripes laid upon the bare back, or by two or three hours' confinement in stocks located near the meeting-house, or in some other public place. The generation which formed the constitution, and the immediate successor of that generation, had the best means of judging what pecuniary and physical punishments would be equivalents for those which in 1784 limited the jurisdiction of justices, and which soon afterward became obsolete by reason of the change in the notation of money and the change in public opinion rendering corporal punishments odious. Besides knowing all the facts bearing upon the question, they were imbued with the spirit of the law of the times. On a question of this kind one may confidently rely upon the correctness of their decision.

Upon the enactment of the General Statutes, an attempt was made to increase the punishment for these offences, leaving them, nevertheless, within the jurisdiction of justices. Every justice of the peace was authorized to hear and determine any action of a criminal nature arising or triable within his county, in which the punishment was by fine not exceeding twenty dollars, or im-

prisonment not exceeding six months, or both. G. S., c. 234, s. 4. This provision is still in force. P. S., c. 248, s. 3. A comparison of the fines prescribed for minor offences by the Revised Statutes with those prescribed in the later statutes shows that the fines were correspondingly increased in 1867, or have been since. Compare R. S., c. 113, s. 15, c. 5, s. 3, c. 218, s. 1, with G. S., c. 252, s. 16, P. S., c. 7, s. 5, c. 278, s. 20, respectively. The fine for stealing property of the value of ten dollars or less was increased to fifty dollars. Laws 1844, c. 150, ss. 1, 2; Laws 1847, c. 502, ss. 1, 2; G. S., c. 260, ss. 5, 6; P. S., c. 275, ss. 5, 6. The question arises whether the legislature had authority under the constitution to make such changes. It is well known that ten dollars in gold was then worth from $13.50 to $14.50 in currency. 1 Rep. Comp. Cur., 1898, p. 365. This was probably one of the facts that induced the changes, but it does not wholly account for them. Moreover, the authority of the legislature upon this subject does not change with the fluctuations in currency. As has been shown, the civil jurisdiction of justices prior to 1876 was limited to cases in which the amount in controversy did not exceed four pounds, or thirteen dollars and thirty-three cents. If the jurisdiction of justices in criminal cases might be increased, on account of a depreciation in the currency, without violating article 20 of the bill of rights, their jurisdiction in civil cases might be increased for the same reason without violating article 76 of the constitution. It is believed that no one ever asserted that the civil jurisdiction could be increased for this reason. The money in which a fine or judgment is to be paid may be changed by the laws relating to specie payments and tender, but the sum adopted by the constitution to indicate the limit of justices' jurisdiction cannot be changed for similar reasons. Being a boundary it must be stable, although arbitrarily fixed.

It is unnecessary to inquire what other reasons governed the legislature of 1867 in this matter, for, whatever they may have been, they could not override the constitution. Justices of the peace did not have authority in 1784 to fine offenders to the extent of twenty dollars. The constitution does not allow of any such inconsistency as would exist if they might fine offenders twenty dollars, when they could render judgments in civil actions for only thirteen dollars and thirty-three cents. Its authors certainly deemed it as necessary to secure a person from being deprived of his property without the judgment of his peers in a criminal action as it was in a civil action.

What, then, is the *status* of the existing statutory provisions under consideration? Are they wholly void, or are they valid to the extent of the constitutional limit? It does not admit of a doubt that the legislature did not intend, by increasing the fines pertaining to these minor offences, to transfer them to the higher

class. The intention was to retain them within justices' jurisdiction, and increase the punishment that might be administered in that jurisdiction. There is no reason to suppose they would have changed the jurisdiction for the purpose of increasing the punishment. This fact is an important one to be borne in mind in deciding the above questions. It distinguishes the case from *State* v. *Dolby*, 49 N. H. 483, and *State* v. *Runnals*, 49 N. H. 498. It changes the aspect of the question under consideration so that it may be fairly stated in this form : Does the mere circumstance that the legislature accidentally fixed the limit of punishment incident to an offence higher than they were authorized to do, render the portion of the law conferring jurisdiction in respect to the offence void ?

" Whatever may be the language of the legislature, the court is bound to presume that it intended to keep within the limits of the constitution." *Leavitt* v. *Lovering*, 64 N. H. 607, 608, and authorities cited. The following are some of the cases in which this presumption has been more or less relied upon to sustain the validity of statutes, the terms of which, considered by themselves and construed literally, would make the statutes conflict with the constitution :

" The power delegated by the constitution ' to make and ordain all manner of reasonable and wholesome orders, laws,' etc., confers no authority to make an order or law in plain violation of the fundamental principles of natural justice, though the act may not be prohibited by any express limitation in the constitution." For example, a law authorizing the taking of private property for public use without a provision for making compensation to the owner, although apparently within the authority delegated and not expressly excepted therefrom, is not in fact within such authority. The case is excepted from the general authority by implication arising from the fact that such a law would be in conflict with the principles of natural justice. *East Kingston* v. *Towle*, 48 N. H. 57, 59, 60.

By the terms of an act of 1833 (Laws 1833, *c.* 108), the factory of a corporation was taxable once to the corporation as real estate and again to the stockholders as shares of stock in the corporation ; but as double taxation was unconstitutional, it was inferred that the legislature did not intend to authorize such taxation, and the statute was made consistent with the constitution by implying a proviso or exception for such cases. *Smith* v. *Burley*, 9 N. H. 423, 427. See, also, *Opinion of the Justices*, 4 N. H. 565.

If a provision in a statute requiring a railroad tax to be assessed, " as near as may be in proportion to the taxation of other property . . . in the several towns and cities in which " the road is situated, is unconstitutional, the statute is not void,

but the proportion required by the constitution is substituted for the prescribed proportion, through presumed intent. If the tax assessed by the statutory measure is too large, it is not abated wholly, but only so far as is necessary to bring it down to the constitutional limit. *B., C. & M. Railroad* v. *State,* 60 N. H. 87, 97.

There is an implied proviso in a statute of limitations expressed in general terms, that the parties to contracts existing at the date of the passage of the statute shall have a reasonable time after that date within which to bring actions on their contracts, although the language of the statute, when applied to the facts in such cases, limits the time to a briefer period. The proviso rests upon the inference that the legislature intended that the statute should not be rendered void by an unconstitutional impairment of the obligation of contracts. *Willard* v. *Harvey,* 24 N. H. 344, 354, 355; *Dow* v. *Railroad,* 67 N. H. 1, 56.

The statute authorizing the town of Antrim to build a school building, and give a perpetual lease of it to an academy corporation "for school purposes without payment of rent" (Laws 1883, c. 202, s. 5), was construed so as "to be consistent with a presumed legislative intent not to give an unconstitutional and void sanction to taxation for a private purpose" by introducing into the contemplated lease, by implication, a reservation in behalf of the public of a common and equal right to use the building free from unreasonable discrimination, and of all other rights necessary to render the appropriation of public money to that purpose constitutional. *Holt* v. *Antrim,* 64 N. H. 284.

The act of 1863 relating to damages occasioned by dogs, provided, among other things, that a person suffering damage might present proofs of the same to the selectmen of the town in which the damage happened, and that the selectmen should thereupon draw an order in his favor upon the town treasurer for the amount of the damage, and the treasurer should register the orders as received, and on the second Tuesday of March annually should pay them in full or *pro rata,* according as the money received by the town from taxes on dogs was sufficient. The right was given to the town to recover of the owner of the dog the full amount of the order drawn for damage occasioned by his dog. Laws 1863, c. 2753, s. 3. In *East Kingston* v. *Towle,* 48 N. H. 57, the plaintiffs sought to recover the amount of an order drawn under this statute, and the defendant demurred, on the ground that the statute was unconstitutional. It was held that, so far as the statute undertook to charge the defendant with the amount of damage determined by the selectmen, it was not a valid law, because it gave the defendant no opportunity to be heard before the selectmen, and no right to a trial by jury. But the court (*Perley,* C. J.) say: "An act may be in part beyond

legislative authority, and within it for the residue; and if the act is capable of being administered in the parts which are within the power of the legislature to enact, it will so far be valid. It would be in the power of the legislature to make towns liable for damage done by dogs, and to give the towns a right of action to recover the actual damage from the owners of the dogs, as is done in the case of obstructions placed on highways; and we think an action may be maintained on this statute by the town to recover from the owner of the dog the actual damage, which the jury who try the case find the owner of the animals to have suffered, not exceeding the amount of the order drawn by the selectmen." This decision substituted the trial by jury guaranteed by the constitution, as the means of determining the issues between the parties, for the unconstitutional means provided by the statute. This change must have been based upon the presumption that the legislature intended the act should have a legal operation, and that, if the procedure provided by it was unconstitutional, a procedure should be used which would not be objectionable on that ground. If everything except the language of the act is excluded from consideration, this change must be regarded as a substantial reconstruction of the statute. But the legal view is not thus limited. The constitution, as well as the statute, is a part of the law of the land. It is a law which the legislature could not override or suspend, and which they presumptively intended should aid in their purpose by upholding their action, or modifying it so that their purpose could lawfully be carried into effect.

By the provisions of the statutes under consideration, justices of the peace are given jurisdiction of actions of a criminal nature where the punishment is by fine "not exceeding twenty dollars," etc.; and certain offences are punishable by fine "not exceeding twenty dollars," etc. By considering in connection with these provisions the constitutional provision which limits justices' jurisdiction to cases in which the punishment does not exceed that which justices could administer according to the usage prevailing at the time of the formation of the constitution, and the fact established beyond doubt that the legislature did not intend to change the class or grade of these offences by attaching a higher punishment to them, and the presumption that the legislature in enacting these provisions intended to keep within constitutional limits, the inference is almost irresistible—at least it is not accompanied by a reasonable doubt—that, if the constitutional limit was found, upon investigation, to be below twenty dollars, it was the limit intended. The legislature undoubtedly understood that twenty dollars did not exceed the constitutional limit, but they were not able to determine the question definitely. The opportunities of legislative bodies for investigating such a question are not ordinarily sufficient to

allow a careful and thorough investigation. They have but little time to give to each of the many bills that come before them, and their examination of the questions involved must necessarily be somewhat unsatisfactory. In this case, although the legislature understood they had the authority to fix the limit at twenty dollars, they used qualifying words which allow it to be a smaller sum and still come within the ordinary meaning of their language. Ten dollars is a sum "not exceeding twenty dollars." It is as certain that they intended the limit should not exceed that provided by the constitution as it is that they intended it should not exceed twenty dollars, if that sum was not so large as the constitution would allow. Their intent might have been fully expressed in this way: "Not exceeding the constitutional limit for justices' jurisdiction, or twenty dollars in any event." This certainly is no greater apparent change in the statutes than was made in the case of *East Kingston* v. *Towle,* and the other cases cited. It is, in fact, no change at all. It is merely reading the words of the statutes in the light of the circumstances under which the words were used. It is merely giving to the words the meaning which those who made use of them gave to them. All room for doubt as to these conclusions is removed by the fact that there was no intent to change the grade of the offences. And when the intention of the legislature is plain, it is the duty of the court so to construe the act as to carry out the intention if the language used will fairly admit of such construction. *Opinion of the Justices,* 45 N. H. 590, 591.

The offence with which the defendant was charged was fast driving in the compact part of a town. The first statute on the subject was enacted in 1792, and subjected the offender to a penalty of six shillings. Laws, *ed.* 1792, *p.* 181; *ed.* 1830, *p.* 160, *s.* 5. The Revised Statutes made the punishment a fine of not less than one dollar nor more than ten dollars, or imprisonment not less than five days nor more than thirty. R. S., *c.* 113, *s.* 13. This punishment seems to have been adopted from the act of 1831 relating to offences against the police of towns. Laws 1831, *c.* 33; Comm'rs Rep., R. S., *c.* 114, *ss.* 14, 16. It was changed by the General Statutes to a fine from one dollar to twenty dollars, or imprisonment from five days to six months (G. S., *c.* 252, *ss.* 14, 16); and by *c.* 31, Laws 1878, to a fine not exceeding twenty dollars, or imprisonment not exceeding six months, where it has since remained. P. S., *c.* 264, *ss.* 18, 20. The offence falls within the class of which justices are given jurisdiction; and the justice in this case, in ordering the defendant to pay a fine of one dollar and the costs of prosecution, did not exceed his jurisdiction. The defendant's motion to dismiss the appeal should be denied.

*Case discharged.*

BLODGETT, C. J., and PARSONS and PEASLEE, JJ., concurred: WALLACE, PIKE, and YOUNG, JJ., concurred in the result.