Wisconsin Keeley Institute Co. vs. Milwaukee County.

WISCONSIN KEELEY INSTITUTE COMPANY, Respondent, vs. MILWAUKEE COUNTY, Appellant.

*January 12 — February 2, 1897.*

*Constitutional law: Police power: Drunkards, county liability for treatment of: Taxation.*

Chapter 203 of the Laws of 1895, providing that habitual drunkards who are "pecuniarily unable to procure and pay for treatment for such disease" may, by order of the county court or of the judge thereof, be sent for treatment to some institution in the state for the cure of such disease at the expense of the county in which they reside, is not a legitimate exercise of the police powers of the state. It also involves the imposition upon the county, without its consent, of a tax for the benefit of private institutions and individuals, not the legitimate objects of public charity. It is therefore unconstitutional and void, and an institution to which a drunkard has been so sent for treatment cannot recover from the county therefor.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

The case is fully stated in the opinion of the court.

*N. S. Murphey,* for the appellant.

For the respondent there was a brief by *Rietbrock & Halsey* and *E. E. Chapin,* and oral argument by *E. E. Chapin* and *L. W. Halsey.* They argued that the police power of the state extends to all regulations affecting the health, good

Wisconsin Keeley Institute Co. vs. Milwaukee County.

morals, peace, and safety of society, and may properly be exercised whenever the legislature deems it necessary for the public welfare and safety.  18 Am. & Eng. Ency. of Law, 746; Tiedeman, Lim. of Police Power, § 2; *Butler v. Chambers*, 36 Minn. 69; *People v. Smith*, 66 N. W. Rep. 382. Drunkards are not only a burden but a menace to society, and are proper subjects of legislative solicitude and restraint. *Comm. v. Whitney*, 11 Cush. 479.  It is for the interest of society to reduce the suffering caused by drunkenness as much as possible, and for that purpose the state may lawfully establish asylums and hospitals.  *Baltimore v. Keeley Inst.* 81 Md. 106; *Milwaukee Indust. School v. Milwaukee Co.* 40 Wis. 328.  So long as the state and county have made no such provision for their care and treatment, it should be obtained where it would be cheapest and most efficient, and the sums to be paid to private institutions under this statute are not donations but compensation for care and treatment.

CASSODAY, C. J.  Ch. 203, Laws of 1895, provides, in effect: (1) That when any citizen of the state becomes an habitual drunkard, and is pecuniarily unable to procure and pay for treatment for such disease, any citizen of the state, the next friend, the attending physician, or any public officer may petition the county court or judge thereof, within and for the county where such habitual drunkard resides, for an order of said court or judge thereof permitting said habitual drunkard to take treatment at some institution for the cure of drunkenness and drug addictions, established within the state, at the expense of the county, as the county judge may select. (6) That the term "habitual drunkard," as defined by the act, includes all persons addicted to the use of spirituous, malt, or fermented liquors, morphine, opium, cocaine, or other drugs or narcotics to such a degree as to deprive him or her of the power of reasonable self-control.  (2) That

such petition is required to set forth the full name, age, and residence of such habitual drunkard, whether married or single; that he has resided within the state at least one year previously; that he has not the means to pay for such treatment, nor have the person or persons, if any, who are charged with his support; what addiction he is affected by; that he appears to be unable to. abstain by means of will power alone; and praying that such habitual drunkard may have treatment at the expense of the county at such institute,— such petition to be signed and verified by the petitioner, and accompanied by a certificate, signed and sworn to by two reputable citizens and taxpayers, and the written consent of such drunkard to the granting of the prayer of the petition, and his agreement to take the treatment and obey the rules of the institution.   (3) That, upon presenting such petition, verification, and written consent, the court or judge thereof, upon being satisfied of the truth thereof, shall cause an order to be entered that such drunkard shall be taken to some institution within the state, to be designated therein, provided that the expense of treatment in each case shall not exceed the sum of $130, which sum shall cover and include all expenses for treatment, medicines, and board for four weeks, and such expense shall be paid by the county; (4) that no such court or judge thereof shall send any person for treatment a second time; (5) that any person so treated is at liberty to reimburse the county.

The complaint alleges, in effect, the incorporation of the plaintiff; that one J. S. White, an alleged habitual drunkard, age forty-two years, and a married man, and a resident of the defendant county, was, May 31, 1895, upon the requisite petition, certificate, verification, and consent of the said White, ordered by the county court to be conveyed to the Keeley Institute at Waukesha, for treatment for such habitual drunkenness, at the expense of Milwaukee county, not to exceed $130; that, under such commitment, said White

was duly conveyed to the plaintiff's said institution for such treatment, and was duly received into the plaintiff's institution for treatment, and was duly treated for said drunkenness and inebriety for a period of four weeks, commencing May 31, 1895, and the plaintiff in all things conformed to and complied with the terms and provisions of said act; that the defendant, by reason thereof, became and now is indebted to the plaintiff therefor in the sum of $130, with interest,— and prays judgment accordingly.    To that complaint the defendant demurred, on the ground that it did not state facts sufficient to constitute a cause of action.    From the order overruling the demurrer the defendant brings this appeal.

It is conceded that White was committed to the plaintiff's institute in the manner required by the act, and was there treated for drunkenness, as alleged, and that the plaintiff is entitled to recover in this action if the act in question is valid.    On the other hand, it is obvious that, if the act is void, then the action cannot be maintained.    The question presented, therefore, turns entirely upon the constitutionality of the act.    It is undoubtedly true, as claimed by counsel for the plaintiff, that the state legislature has authority to exercise any and all legislative powers not delegated to the federal government, nor expressly or by necessary implication prohibited by the national or state constitution. *Bittenhaus v. Johnston*, 92 Wis. 595, and cases there cited. So, it is undoubtedly true, as claimed, that a statute should, if possible, be so construed as not to be in conflict with the constitution.    But no construction is permissible which defeats the obvious purpose and object of constitutional restrictions.

Counsel for the plaintiff contend that the act in question comes within the police power of the legislature, and is therefore valid.    Such power undoubtedly extends to the regulation and protection of the lives, limbs, health, comfort, good

Wisconsin Keeley Institute Co. vs. Milwaukee County.

order, morals, peace, and safety of society, and hence may be exercised on many subjects and in numerous ways. *State v. Heinemann*, 80 Wis. 256, and cases there cited; *Bittenhaus v. Johnston, supra.* Mr. Cooley defines such power in the following language: "The police of a state, in a comprehensive sense, embraces its whole system of internal regulation, by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish, for the intercourse of citizens with citizens, those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others." Cooley, Const. Lim. (6th ed.), 704. Mr. Tiedeman gathers from the American definitions given by him that "the term must be confined to the imposition of restraints and burdens upon persons and property." He further says: "The power of the government to embark in enterprises of public charity and benefit can only be limited by the restrictions upon the power of taxation, and to that extent alone can these subjects in American law be said to fall within the police power of the state." Tiedeman, Limitations, 4. It is not denied, if not conceded, that the legislature has ample power to suppress drunkenness and intemperance. The statutes have for many years provided for the care of inebriates in county asylums. R. S. secs. 604*f*, 604*g*. So they have provided for placing drunkards under guardianship, and committing them to asylums. R. S. secs. 3978, 3979; *State ex rel. Larkin v. Ryan*, 70 Wis. 683, 684. The power of the legislature to pass such laws is not questioned. Nor is the power of the legislature to prescribe laws for reclaiming drunkards by public authority here involved. We are clearly of the opinion that the act in question is not an exercise of the police power as above defined. On the contrary, it is for private purposes, and to benefit

Wisconsin Keeley Institute Co. vs. Milwaukee County.

private parties. The plaintiff is a private corporation, organized under the general laws of the state, and conducted for private gain. The mere fact that it is subject to visitation and inspection by public officials does not make it a public institution. The manifest purpose of the act is to compel the county in which any citizen resides who has become "addicted to the use of spirituous, malt or fermented liquors, morphine, opium, cocaine, or other drugs or narcotics, to such a degree as to deprive him or her of the power of reasonable self-control," who has been committed to such institute, in the manner indicated, to pay such institution a sum not exceeding $130 "for treatment, medicines, and board for four weeks," furnished to such person. True, such person is only to be so committed in case he "has not the *means to pay for said treatment*, nor have the person or persons, if any, who are charged with his support." This language clearly implies the ready means or money to make such payment. It does not mean that such person has become a pauper, or that he has become dependent upon charity or benevolence for support. *Rhine v. Sheboygan*, 82 Wis. 352. It is there said by Mr. Justice PINNEY that "the word 'poor,' in the statute, has a restricted and technical meaning, and it is practically synonymous with 'destitute,' denoting extreme want and helplessness." In that case, it was, in effect, held, that where a man has property of considerable value over and above incumbrances, and not indispensable for daily use, but available, by way of sale or security, for support, he is not a poor person for whose support the town is liable under the statute. *Ettrick v. Bangor*, 84 Wis. 256.

The act in question does not go upon the theory that the victim of such addiction is helpless and destitute, and hence the subject of public charity. It does treat such addiction as a "disease;" but it does not treat it as a contagious or infectious disease, and there is no allegation or claim that it

is a contagious or infectious disease. The question recurs whether any county may be compelled to pay any private party for treatment, medicines, and board of any resident therein, having a disease not contagious or infectious, merely because such diseased person "has not the means to pay for said treatment." If a county may be compelled to make such payment for such treatment, medicines, and board of a person having such a disease, then it logically follows that every county may be compelled to pay private parties for treatment, medicines, and board of any person having any disease, though not contagious nor infectious, provided the victim has not the present means of making such payment himself. We are clearly of the opinion that no such power exists. This is the result of numerous decisions in this court which might be cited. A few only will be referred to. In *Curtis's Adm'r v. Whipple*, 24 Wis. 350, the town of Jefferson was authorized by statute to raise, by tax, $5,000 to aid in the erection of buildings for the "Jefferson Liberal Institute" therein, in case the majority of the votes cast upon that question at a special town meeting to be held should be in favor of such tax. The electors having decided affirmatively, the tax was accordingly assessed upon the taxable property of the town. Curtis resisted the payment of the tax, and, when his personal property was taken therefor, he brought the action for the wrongful taking and conversion, and recovered. The court held, in effect, that the "Jefferson Liberal Institute" was essentially a *private* educational institution, in which neither the town nor its inhabitants, *as such*, had any interest or power of control; and hence the act empowering the town to raise by taxation the sum mentioned was invalid. That decision has frequently been affirmed by this court. *Whiting v. S. & F. du L. R. Co.* 25 Wis. 181; *State ex rel. McCurdy v. Tappan*, 29 Wis. 664, 684; *Attorney General v. Eau Claire*, 37 Wis. 436. As stated by RYAN, C. J., in the case last cited: "Taxation is the absolute

conversion of private property to public use. And its va-
lidity rests on the use. In legislative grants of the power
to municipal corporations, the public use must appear. . . .
The legislature can delegate the power to tax to municipal
corporations for public purposes only; and the validity of
the delegation rests on the public purpose. Were this other-
wise, as was said at the bar, municipal taxation might well
become municipal plunder." Page 438, citing numerous
cases in this court in support of the proposition. Here the
act compels payment without the consent of the county or
its taxpayers; and in such cases the purposes for which tax-
ation may be authorized are much more restricted than
where such consent is first obtained, as indicated in numer-
ous decisions of this court. *Lund v. Chippewa Co.* 93 Wis.
640, and cases there cited.

A learned writer on constitutional law says upon this sub-
ject: " So, a municipal corporation cannot be authorized to
tax the citizens for the support of a school, hospital, or li-
brary, although its doors are open to the public and a great
number of persons will participate in the advantages which
it confers, unless it is a public agency, or controlled and man-
aged by the state. The power would seemingly be limited,
though there were no express prohibition. It is inherent in
the idea of taxation that it should be for the public good;
and a law taxing one set of men for the benefit of another,
or in furtherance of an industrial enterprise in which they
were engaged, would be regarded as confiscation in all civil-
ized countries. . . . Schools, almshouses, and hospitals
occupy an intermediate position, and may be public or pri-
vate uses, according to circumstances. When controlled by
the commonwealth, and open to all who need such aid, they
are public uses, and may be endowed and sustained by tax-
ation; but it cannot properly be employed for the support
of any institution, however admirable or useful, which is in
the hands of private persons who are not accountable to

the government." 1 Hare, Am. Const. Law, 280, 284, citing, among other cases, *Loan Asso. v. Topeka*, 20 Wall. 655; *Lowell v. Boston*, 111 Mass. 454; *St. Mary's Industrial School v. Brown*, 45 Md. 310. To the same effect, *Philadelphia Asso. v. Wood*, 39 Pa. St. 73; *Hitchcock v. St. Louis*, 49 Mo. 484; *State ex rel. Griffith v. Osawkee*, 14 Kan. 418. The Massachusetts case cited appealed strongly to the generosity of the people, as the legislative enactment authorized Boston to aid in rebuilding portions of the city destroyed by the great fire of 1872; but the act was held to be unconstitutional and void. The Kansas case made a similar appeal, and involved the validity of a legislative enactment authorizing townships to provide "the destitute citizens of such townships with provisions, and with grain for seed and feed;" but the act was held to be unconstitutional and void, as not being for a public purpose. The opinion in that case was written by Justice BREWER, now a justice of the supreme court of the United States; and it is not only instructive, but, as we think, unanswerable.

Three cases are cited involving the validity of statutes somewhat similar to the one in question. The Maryland act was broadly distinguishable from the one at bar, and was held valid. *Mayor and City Council of Baltimore v. Keeley Institute*, 81 Md. 106. The Colorado act was more like ours, and it was held, in effect, that one who "is financially unable to pay for the treatment of such disease" belongs to a class of "poor who have become helpless and unable to care for themselves," and hence "within the governmental functions of the state," and the act was valid. *In re House*, 46 Pac. Rep. 117. The case is not made to turn upon the questions we have considered, and we cannot regard it as an authority in the case at bar. The Minnesota case is made to turn upon the delegation of power, and the law is held to be invalid. *Foreman v. Hennepin Co.* 64 Minn. 371.

But it is unnecessary to continue the discussion.    For the reasons given, we hold the act in question unconstitutional and void.

*By the Court.*— The order of the circuit court is reversed,. and the cause is remanded for further proceedings according to law.

See note to this case in 36 L. R. A. 55.— REP.

