JUNEAU COUNTY, Plaintiff in error, vs. WOOD COUNTY, Defendant in error.

*February 7 — February 26, 1901.*

*Poor laws: Aid from soldiers' relief fund: Settlement.*

While receiving aid from a county, acting under the county system for the relief of the poor, out of the "soldiers' relief fund" provided for by secs. 1529a–1529i, Stats. 1898, the recipient is precluded from gaining a settlement in the county by subd. 4, sec. 1500, providing that "no residence of a person in any town while supported therein as a pauper shall operate to give such person a settlement in such town."

ERROR to review a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

J. T. *Dithmar*, attorney, and *H. W. Barney*, of counsel, for the plaintiff in error.

*H. Wipperman*, for the defendant in error.

Juneau County vs. Wood County.

CASSODAY, C. J.    This writ is brought to reverse a judgment based upon findings on the trial of an appeal from the disallowance, by the county board, of the claim of *Juneau County* against *Wood County* for the support of a pauper and his family.    The findings are to the effect that one Charles Spies and family resided in Marathon county from November 1, 1892, to April 1, 1894, and during that time were self-supporting; that at the last-named date they moved to *Wood County*, and received aid from that county through its poor commissioners, "as poor and indigent persons," July 1, August 6, and September 11 and 24, 1894, and December 21, 1895, and February 8, April 30, and May 2 and 29, 1896; that Charles Spies was an honorably discharged soldier of the late war of the Rebellion, and received aid from *Wood County* "as a poor and indigent person" in December, 1894, and January, February, March, and April, 1895, "out of the soldiers' relief fund" of that county; that Spies and family left *Wood County* and went to *Juneau County*, July 10, 1896, and have resided in *Juneau County* ever since that time, and in July, August, November, and December, 1896, and January, February, March, April, May, and June, 1897, *Juneau County* furnished aid for Spies and his family, as poor and indigent persons, to the amount of $73; that both *Wood* and *Juneau Counties* were, during such times, under the county system for the support of the poor. And, as conclusions of law, the court found, in effect, that Charles Spies and family, from July 1, 1894, to May 29, 1896, were supported in and by *Wood County* as paupers; that neither Charles Spies nor any of his family has a settlement in *Wood County;* that judgment be rendered in favor of *Wood County* and against *Juneau County* for the costs and disbursements of this action; and ordered judgment to be entered accordingly.    To reverse that judgment, *Juneau County* sued out this writ of error.

It is conceded that neither Spies nor any of his family had

a settlement in *Wood County* on or prior to September 24, 1894. The statute provides that "every person of full age who shall have resided in any town in this state one whole year shall thereby gain a settlement in such town; but no residence of a person in any town while supported therein as a pauper shall operate to give such person a settlement in such town." Subd. 4, sec. 1500, Stats. 1898. The contention on the part of *Juneau County* is that Spies and his family were not precluded by the statute quoted from gaining a settlement in *Wood County* merely by reason of the fact that between September 24, 1894, and December 21, 1895, they received aid out of the soldiers' relief fund of *Wood County* in each of five different months. During that period, which was for more than a year, it is conceded that they received no aid from any other fund. The decision in this case necessarily turns upon the determination of the question whether such contention is correct.

Both counties were, during the times in question, acting under the county system. Secs. 1517–1529, Stats. 1898. One of these sections provides that "when any county shall have abolished the distinction between county and town poor the powers conferred and duties imposed by this chapter on town supervisors, as officers of the poor, shall be exercised by the county superintendents of the poor in such county, if there be any, and if there be none, then by such officers or agents as shall be appointed by the county board therefor; otherwise by such board." Sec. 1524. That section further provides "that temporary aid shall be given, granted, furnished and provided to and for all honorably discharged indigent Union soldiers, sailors and marines, and the indigent wives, widows and minor children of indigent or deceased honorably discharged Union soldiers, sailors or marines, without requiring the removal of any such person to any poorhouse," etc. The statutes also make special provisions for the "relief of soldiers, sailors and marines." Secs. 1529a–

1529*i*.  One of these sections provides for the annual levy
and collection of a tax "for the purpose of creating a fund
for the relief of needy Union soldiers, sailors or marines, the
indigent wives, widows, minor children of deceased Union
soldiers, sailors and marines, and the indigent parents of
such soldiers, sailors or marines," etc.  Sec. 1529*b*.  The next
section requires a "written report to the county board . . .
of all resident indigent persons of the classes mentioned."
Sec. 1529*c*, as amended by ch. 231, Laws of 1899.  It will be
observed that, to entitle any person to such relief, he must
be "needy" or "indigent."  The language is similar to the
statutes for the "relief and support of the poor," where, with
certain exceptions, relief and support are only to be given
to "poor and *indigent* persons" who "shall stand in *need*
thereof" — "poor" persons.  Secs. 1499–1516, Stats. 1898.
As stated by Mr. Justice PINNEY: "The word *poor* in the
statute has a restricted and technical meaning, and it is
practically synonymous with 'destitute,' denoting extreme
want and helplessness."  *Rhine v. Sheboygan*, 82 Wis. 354;
*Ettrick v. Bangor*, 84 Wis. 259; *Wisconsin K. I. Co. v. Mil-
waukee Co.* 95 Wis. 158.  Webster defines the word "in-
digent" as a person "destitute of property or means of com-
fortable subsistence; needy; poor."  Other dictionaries define
it in substantially the same way.  So Webster defines
"needy" as a person "distressed by want of the means of
living; very poor; indigent; necessitous."  Others give sim-
ilar definitions.

The trial court was clearly right in finding that Spies and
his family received aid out of the soldiers' relief fund, "as
poor and indigent persons."  Upon no other theory, in our
judgment, could such taxation for supplying such fund be
sustained.  In the case last cited we were compelled to hold
an act of the legislature unconstitutional which provided
that habitual drunkards who were "pecuniarily unable to
procure and pay for treatment for such disease" might be

treated for such disease at the expense of the county. That decision was based upon the theory that such legislation was not a legitimate exercise of the police powers of the state, but was an imposition of a tax upon the county, without its consent, for the benefit of private parties. Much that is there said would be applicable to the sections of the statutes in question, were they to be construed as claimed by counsel for *Juneau County*. The reasoning of that case need not be here repeated. See also *Wisconsin Industrial School v. Clark Co.* 103 Wis. 651, 666.

*By the Court.*— The judgment of the circuit court is affirmed.