THE STATE EX REL. GARRETT vs. FROEHLICH, Secretary of State.

*December 20, 1902—May 29, 1903.*

*Constitutional law: Keeley cure orders: Legislative appropriation to pay county orders issued under unconstitutional law: Public purpose: Taxation.*

1. Ch. 203, Laws of 1895, providing for the treatment (Keeley cure) of habitual drunkards in private institutions at the expense of the county in which each resided, was held unconstitutional and void, because it involved the imposition upon the respective counties of the state, without their consent, of a tax for the benefit of private institutions and individuals, not the legitimate objects of public charity. Thereafter ch. 468, Laws of 1901, was enacted. The later statute appropriated a fixed sum for the purpose of paying, *pro rata*, innocent purchasers of unpaid county orders issued under ch. 203, Laws of 1895, and issued before it had been declared unconstitutional. Relator, having brought himself within the provisions of ch. 468, Laws of 1901, on the refusal of the secretary of state to draw his warrant on the state treasurer to pay relator's claim, duly audited as required by ch. 468, Laws of 1901, brought *mandamus* to compel the drawing of such warrant. *Held*, that ch. 468, Laws of 1901, is unconstitutional; that thereby the legislature attempted to give away the public funds of the state to private parties, for the same private purposes which, under ch. 203, Laws of 1895, had been condemned, and that it was not an attempt to appropriate public funds raised by taxation for some object of public or common interest.

2. Sec. 1, art. VIII, Const., provides that the rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe. Ch. 468, Laws of 1901, provided

an appropriation to pay, *pro rata*, innocent purchasers of county orders issued under ch. 203, Laws of 1895, before it had been declared unconstitutional. _ *Held*, that ch. 468, Laws of 1901, did not come within the constitutional rule of uniformity of taxation, since it is necessary, not only that the object of the appropriation should be public, but also that it should subserve the common interest and well-being of the people of the state.

3. Under sec. 5, art. VIII, Const., providing that the legislature shall provide for an annual tax sufficient to defray the estimated expenses of the state for each year, state taxes are only authorized to pay state expenses.

4. Under ch. 203, Laws of 1895, numerous private persons were treated for a disease (drunkenness), by certain private persons and corporations, under the supposition that the respective counties where the patients lived would pay for such treatment an amount not exceeding $130 for each. County orders issued therefor were declared void because ch. 203 was unconstitutional, in that it imposed a tax upon the counties, without their consent, for the benefit of private institutions and individuals, not the legitimate objects of public charity. Thereafter the legislature appropriated a sum of money, to be apportioned, *pro rata*, among the holders of such orders. *Held*, that such appropriation was essentially an appropriation from the general fund to pay private claims growing out of private transactions, and the fact that such orders had been transferred to innocent purchasers did not change the situation, or give the orders any greater validity.

MANDAMUS to the Secretary of State. *Alternative writ quashed.*

October 22, 1902, the relator filed in this court a petition for an alternative writ of *mandamus* to compel the defendant, as secretary of state, to draw a warrant on the state treasurer, payable to him, for $492.36, in the manner provided by ch. 468, Laws of 1901, or show cause to the contrary.

The petition alleges, in effect, that the relator was a resident and citizen of Eau Claire; that after the enactment of ch. 203, Laws of 1895, providing for the Keeley treatment and cure of inebriates, and during 1895, 1896, and 1897, one Dr. Montgomery established and maintained the Eau Claire Institute for such treatment of inebriates; that eight persons therein named were treated by such institute upon certified

orders of county judges at the expense of the respective coun-
ties sending them, as prescribed in that act; that the aggre-
gate amount of the expense of such treatment of said eight
persons was $815; that between September 10, 1895, and
February 2, 1897, the relator sold and delivered to Dr. Mont-
gomery merchandise and supplies to the amount of $815, and
received in payment therefor an assignment from Dr. Mont-
gomery of said orders for the commitment and treatment
of such inebriates to the amount of $815, which orders are
still owned by the relator, as an innocent purchaser thereof,
and that they are wholly unpaid; that after the relator so
purchased such orders and held the same, this court, on Feb-
ruary 2, 1897, decided that ch. 203, Laws of 1895, was un-
constitutional and void (*Wis. K. I. Co. v. Milwaukee Co.* 95
Wis. 153, 70 N. W. 68); that ch. 468, Laws of 1901, was en-
acted to reimburse, at least in part, the relator and other hold-
ers of similar orders for money so paid out and expended by
them; that within sixty days after the publication of that
act the relator filed with the secretary of state, state treasurer,
and attorney general, as the auditing committee provided for
therein, the said county orders so purchased by him, with full
proof that he was such innocent purchaser, and the same
were audited by such committee at $815; that several other
persons holding similar orders so filed the same and made
similar proof before the committee, and the same were au-
dited by such committee; that all orders so filed with the
committee and audited amounted in the aggregate to
$49,658.44, which orders or claims should be paid *pro rata*
out of the $30,000 appropriated by ch. 468, Laws of 1901,
and that the relator's proportionate share thereof is $492.36;
that the state treasurer has in his hands the $30,000 so ap-
propriated, and the same has not been appropriated for any
other purpose; that it is the duty of the secretary of state to
draw his warrant on the state treasurer payable to the relator
for his proportionate share of such appropriation, to wit,

$492.36, and the duty of the state treasurer to pay the same, but that the secretary of state has refused and still does refuse to draw such warrant, and the state treasurer still refuses to pay to the relator the amount stated, and that such refusals are upon the sole ground that ch. 468, Laws of 1901, is unconstitutional and void.

On such petition an alternative writ of *mandamus* was issued by this court as prayed October 22, 1902, and on November 11, 1902, the secretary of state, by E. R. Hicks, attorney general, appeared, and by way of return to the alternative writ of *mandamus* moved the court to quash the writ, for the reason that the facts stated were not sufficient to constitute a cause of action.

For the relator there was a brief by *Wickham & Farr* and *Ryan, Merton & Newbury,* and oral argument by *James Wickham* and *T. D. Ryan.* They contended, *inter alia,* that the state legislature has authority to exercise any and all legislative powers not delegated to the federal government, nor expressly or by necessary implication prohibited by the national or state constitution. *State ex rel. New Richmond v. Davidson,* 114 Wis. 583, 90 N. W. 1067; *N. W. Nat. Bank v. Superior,* 103 Wis. 43; *Wis. C. R. Co. v. Taylor Co.* 52 Wis. 60; *State ex rel. Tesch v. Von Baumbach,* 12 Wis. 310–313; *Overshiner v. State,* 156 Ind. 187, 83 Am. St. Rep. 187, 189; *State v. Narragansett,* 16 R. I. 424, 3 L. R. A. 295–298; *State ex rel. Hicks v. Stevens,* 112 Wis. 170, 172; Cooley, Const. Lim. 204. The legislative construction of the constitution, continued without question for a long number of years, has great weight in determining the constitutionality of the law. *State v. Gerhardt,* 145 Ind. 439, 33 L. R. A. 313–319; *State v. Narragansett,* 16 R. I. 424, 3 L. R. A. 295; *People ex rel. Mooney v. Hutchinson,* 172 Ill. 486, 40 L. R. A. 770–773; *Boyden v. Brookline,* 8 Vt. 286; *Bruce v. Schuyler,* 4 Gilman, 221, 46 Am. Dec. 447; *Maher v. State,* 1 Porter, 265, 26 Am. Dec. 379; 6 Am. & Eng. Ency. of Law

(2d ed.) 932, 933; *Dean v. Borchsenius,* 30 Wis. 236–246; *Cohens v. Virginia,* 6 Wheat. 264, 418; *Harrison v. State ex rel. Harrison,* 22 Md. 468, 85 Am. Dec. 658. The statute does not violate the provisions of sec. 2, art. VI, Const., which provides that the secretary of state shall be *ex officio* auditor. *State ex rel. Crawford v. Hastings,* 10 Wis. 525–530; *State ex rel. Sloan v. Warner,* 55 Wis. 271; *Martin v. State,* 51 Wis. 407; *State ex rel. Cornish v. Tuttle,* 53 Wis. 45; *C. & N. W. R. Co. v. Langlade Co.* 56 Wis. 614; *Lynch v. Steamer "Economy,"* 27 Wis. 69; 6 Am. & Eng. Ency. of Law (2d ed.) 1088. The proposition is not in violation of sec. 1, art. XIV, U. S. Const. *Davidson v. New Orleans,* 96 U. S. 97; *U. P. R. Co. v. U. S.* 99 U. S. 700; *U. S. v. Realty Co.* 163 U. S. 427. The proposition is supported by considerations that are sufficient to support a direct tax. *State ex rel. New Richmond v. Davidson,* 114 Wis. 583, 90 N. W. 1067; 17 Am. & Eng. Ency. of Law (2d ed.) 272; *People ex rel. Buckley v. Board of Police,* 63 N. Y. 623; *Soens v. Racine,* 10 Wis. 271, 281; *Lund v. Chippewa Co.* 93 Wis. 640, 652. A claim supported by moral obligation, or founded in justice and equity in the largest sense of those terms, or in gratitude or charity, will support a tax or appropriation. *Brodhead v. Milwaukee,* 19 Wis. 624; *State ex rel. McCurdy v. Tappan,* 29 Wis. 664; *Lafebre v. Board of Education,* 81 Wis. 660–667; *Lund v. Chippewa Co.* 93 Wis. 640–650; *State ex rel. New Richmond v. Davidson,* 114 Wis. 583, 90 N. W. 1067–1070; *New Orleans v. Clark,* 95 U. S. 644; *U. S. v. Realty Co.* 163 U. S. 427; *N. Y. Life Ins. Co. v. Board of Commissioners,* 99 Fed. 846; *Minneapolis v. Janney* (Minn.) 90 N. W. 312; Cooley, Taxation (2d ed.) 127, 128; *Friend v. Gilbert,* 108 Mass. 408; *Att'y Gen. v. Eau Claire,* 37 Wis. 400–408; *Allen v. Smith,* 173 U. S. 389; *Guthrie Nat. Bank v. Guthrie,* 173 U. S. 528; *Curran v. Holliston,* 130 Mass. 272; *State ex rel. Sayre v. Moore,* 40 Neb. 854, 59 N. W. 755; *Veazie v. China,* 50 Me. 518; *Mor-*

134      SUPREME COURT OF WISCONSIN.      [May

State ex rel. Garrett v. Froehlich, 118 Wis. 129.

*ris v. People,* 3 Denio, 381; *People v. Budd,* 117 N. Y. 13; *Booth v. Woodbury,* 32 Conn. 118; *Guilford v. Board of Supervisors,* 13 N. Y. 143. The expenditure of money in the manner presented in the statute under consideration is not against the policy of the law. *Folschow v. Werner,* 51 Wis. 85; subd. 8, sec. 1038, Stats. 1898; *Board of Commissioners v. Lucas,* 93 U. S. 108; *Pearson v. State,* 56 Ark. 148, 35 Am. St. Rep. 91; *Mount v. State ex rel. Richey,* 90 Ind. 29, 46 Am. Rep. 192; *Board of Education v. McLandsborough,* 36 Ohio St. 227, 38 Am. Rep. 582.

The *Attorney General,* for the respondent, contended, *inter alia,* that inasmuch as payment of the Keeley cure orders could not be enforced by taxation, or because the object of such taxation was a private purpose, that the legislature could not accomplish the same object by indirection, namely, appropriating from the state funds for a private purpose money in the state treasury, and then replace it by taxation. *Spencer v. School District,* 15 Kan. 259–262; *Loan Asso. v. Topeka,* 20 Wall. 655–664; *Hooper v. Emery,* 14 Me. 375; *Bristol v. Johnson,* 34 Mich. 123; *Allen v. Inhabitants of Jay,* 60 Me. 124; *State ex rel. Griffith v. Osawkee,* 14 Kan. 418; *Wis. K. I. Co. v. Milwaukee Co.* 95 Wis. 153, 161.

The following opinion was filed March 21, 1903:

CASSODAY, C. J.   Ch. 203, Laws of 1895, providing "for the treatment and cure of inebriates and persons addicted to the excessive use of drugs and other narcotics," was held to be unconstitutional and void, because it involved the imposition upon the respective counties of the state, without their consent, of a tax for the benefit of private institutions and individuals, not the legitimate objects of public charity. *Wis. K. I. Co. v. Milwaukee Co.* 95 Wis. 153, 158–160, 70 N. W. 68, 70. In that case it was said by the court:

"The act in question does not go upon the theory that the victim of such addiction is helpless and destitute, and hence the subject of public charity. It does treat such addiction as

a 'disease,' but it does not treat it as a contagious or infectious disease, and there is no allegation or claim that it is a contagious or infectious disease. The question recurs whether any county may be compelled to pay any private party for treatment, medicines, and board of any resident therein having a disease not contagious or infectious, merely because such diseased person 'has not the means to pay for said treatment.' If a county may be compelled to make such payment for such treatment, medicines, and board of a person having such a disease, then it logically follows that every county may be compelled to pay private parties for treatment, medicines, and board of any person having any disease, though not contagious nor infectious, provided the victim has not the present means of making such payment himself. We are clearly of the opinion that no such power exists."

The following cases are there cited, in which this court had previously held that the legislature had no power to compel or authorize a municipality to raise money by taxation for a purely private purpose: *Curtis's Adm'r v. Whipple,* 24 Wis. 350; *Whiting v. S. & F. du L. R. Co.* 25 Wis. 181; *State ex rel. McCurdy v. Tappan,* 29 Wis. 664, 684; *Atty. Gen. v. Eau Claire,* 37 Wis. 436. From this last case this quotation was made in the *Keeley Case* from the opinion of the court by Chief Justice RYAN:

"Taxation is the absolute conversion of private property to public use. And its validity rests on the use. In legislative grants of the power to municipal corporations, the public use must appear. . . . The legislature can delegate the power to tax to municipal corporations for public purposes only; and the validity of the delegation rests on the public purpose. Were this otherwise, as was said at the bar, municipal taxation might well become municipal plunder."

Thus, it appears that ch. 203 was declared to be unconstitutional upon the express ground that it compelled any county to pay out of the public moneys of the county, to a private party for a purely private purpose, a sum not exceeding $130 for every inebriate found therein and treated upon the order and certificate of the county judge thereof, as prescribed in

the act. The case was distinguished in the later case of *Wis. Ind. School v. Clark Co.* 103 Wis. 651, 666, 667, 79 N. W. 422, 427, but it was there said by my Brother MARSHALL:

"No 'public purpose,' within any reasonable scope of the term, was discovered in the Keeley law. That was why it met the fate of legislation going beyond the boundaries of constitutional limitations. True, stress was put on the feature that the services of caring for the committed persons were performed by private agencies for private gain. But it was not decided that such feature alone was fatal to the law. The combination of it with the purely private service rendered showed that the entire scheme was private. . . . Stress was laid on the fact that, in order to enable a person to enjoy the benefits of the act, it was not requisite that he should be without means of paying therefor. Destitution as to present means—money in hand, as it were, to make such payment—was all that was required. It was thus demonstrated that there was an absolute absence of any public purpose whatever covered by the law."

In a still later case it was held by this court:

"Neither the county board nor any county officer has any authority, under our statutes, to incur any liability for medical treatment of a pauper to cure him of inebriety as a disease. A county cannot ratify the unauthorized acts of its agents which are beyond the scope of its corporate powers." *Putney Bros. Co. v. Milwaukee Co.* 108 Wis. 554, 556, 557, 84 N. W. 822, 823.

In that case the inebriate was committed under ch. 203, Laws of 1895, and, following *Wis. K. I. Co. v. Milwaukee Co.* 95 Wis. 153, 70 N. W. 68, it was held "that no liability arose by reason of the commitment;" but it was there contended "that it was the duty of the county to relieve and care for" the victim, "under sec. 1517, Stats. 1898, and when this task had been performed by a private person, . . . the county" should be held "liable if its officers knew of the facts and made no objection, and the pauper had been restored to health." In the opinion of the court by my Brother WINSLOW it is said:

"The doctrine here invoked is that of ratification or estoppel. . . . The claim here is not for ordinary relief or care, but for the medical treatment of a pauper for what is termed 'inebriety,' his board being simply a minor incident of the treatment. Neither the county board nor any county officer has authority under any specific statute to contract with a private person or corporation for such treatment, and entail a liability therefor upon the county. Inebriates may, indeed, be received into county asylums under certain restrictions, . . . and may be committed to a county poorhouse, . . . and the county become liable for their care in whole or in part, but the statutes seem to go no further."

Then, after stating that the legislature had "provided certain methods whereby inebriates and habitual drunkards" might be dealt with, and thereby excluded other methods, it was further said:

"There was, therefore, no authority resting in any officer or public body to incur the liability here claimed in the first instance. Such being the case, there can be no ratification by the county. A county cannot ratify the unauthorized acts of its agents which are beyond the scope of its corporate powers." See, also, *Juneau Co. v. Wood Co.* 109 Wis. 330, 333, 334, 85 N. W. 387.

Having thus held that ch. 203, Laws of 1895, was unconstitutional and void on the ground that the legislature had no power to compel a county to give away its public funds to private parties for purely private purposes, the question recurs whether the legislature has power to give away the public funds of the state to private parties for the same private purpose by the enactment of ch. 468, Laws of 1901.

The act, in terms, appropriates $30,000 "for the purpose of paying all innocent purchasers of county orders issued under an invalid law known as chapter 203 of the Laws of 1895, by different county judges of the state of Wisconsin which are yet unpaid and which were purchased prior to the date of the decision of the supreme court of the state of Wisconsin holding said act [ch. 203, Laws of 1895] unconsti-

tutional." It appears from the relation that claims which· arose under the act, and prior to the decision mentioned— a period of 21½ months—had been filed, proved, and audited, to the amount of $49,658.44. The facts stated sufficiently suggest the importance of that decision without any specula-- tion as to what would have been the effect upon the taxpayers of the several counties in the state, had the court held ch. 203,. Laws of 1895, to be valid instead of being unconstitutional and void. The gravity of the case at bar would seem to be· of far greater importance, because more far-reaching in its· application. Counsel for the relator contend that "there is nothing in the constitution providing that the legislature may make appropriations only for public purposes." And then, after admitting "that there are several specific limitations· on the power of the legislature to appropriate money," coun- sel assert that there is "no general limitation confining ap- propriations either to public purposes or legal obligations of the. state." Counsel seemingly realize that it is essential to· maintain these propositions in order to maintain this action. If these propositions are sound, then Chief Justice RYAN was in grave error when he made the statement above quoted,. from his opinion in the *Eau Claire Case* cited. If such prop- ositions are sound, then Chief Justice DIXON was wrong in. declaring, as he did:

"The legislature cannot create a public debt, or levy a tax,. or authorize a municipal corporation to do so, in order to· raise funds for a mere private purpose. It cannot, in the· form of a tax, take the money of the citizens and give it to· an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve· the common interest and well-being of the *community re- quired to contribute." Brodhead v. Milwaukee,* 19 Wis. 652. See, also, cases cited from the supreme court of Pennsyl-- vania in the *New Richmond Case,* 114 Wis. 576, 90 N. W.. 1067.

Mr. Cooley declares: "It is implied in all definitions of taxation that taxes can be levied for public purposes only." Cooley, Taxation (2d ed.) 103–105. And again: "Taxation is the equivalent for the protection which the government affords to the persons and property of its citizens; and, as all are alike protected, so all alike should bear the burden in proportion to the interests secured." Cooley, Const. Lim. (6th ed.) 608.

Mr. Dillon states the rule thus: "It may be regarded as a settled doctrine of American law that no tax can be authorized by the legislature for any purpose which is essentially private, or, to state the proposition in other words, for any but a public purpose." 1 Dillon, Mun. Corp. (4th ed.) § 508. And again: "We may readily conceive of acts of the legislature demanding sacrifices which could not be sustained as legitimate exercises of the taxing power, although no specific provision of the constitution should be infringed." 2 Dillon, Mun. Corp. (4th ed.) § 737. And again: There can be no legitimate taxation to raise money unless it be destined for the uses or benefit of the government, or some of its municipalities or divisions invested with the power of auxiliary or local administration. A public use or purpose is of the essence of a tax." Id. § 736.

In *State ex rel. New Richmond v. Davidson,* 114 Wis. 574, 90 N. W. 1067, numerous cases are cited from this and other courts, to the effect "that the taxing power of the state can only be exercised for some object of public or common interest." It is there said:

"These adjudications, and many others which might be cited, seem to be based upon the broad ground that from the very nature of our state government there is running through our constitution an implied prohibition against forcing our citizens, by way of taxation, to contribute to any mere private purpose or enterprise, and that the determination of the legislature upon the subject is not absolutely conclusive upon the courts."

If the contention of counsel referred to is correct, then the decision of this court in that case is all wrong, and ought to be overruled. If the decision is right, then the contention of counsel, in the particular mentioned, is without foundation. The appropriation for the relief from the terrible calamity caused by the cyclone which struck New Richmond June 12, 1899, was sustained only on the ground that the object of the appropriation was public, and such as to subserve the common interest and well-being of the people of the state at large. In that case it was virtually conceded that the object of the appropriation was public. In considering whether the appropriation was repugnant to that clause of the constitution which declares that "the rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe" (sec. 1, art. VIII, Const.), it was said:

"If the object of the appropriation in question was purely local to the city of New Richmond, then the rule of uniformity would require the tax to supply the same to be limited to that municipality. If, however, the contribution was to subserve the common interest and well-being of the people of the state, then the appropriation was legitimate." *State ex rel. New Richmond v. Davidson*, 114 Wis. 578, 90 N. W. 1067, citing *State ex rel. McCurdy v. Tappan*, 29 Wis. 664, and *Lund v. Chippewa Co.* 93 Wis. 647, 67 N. W. 927.

In this last case it was said:

"This provision manifestly requires such uniformity, in case of a state tax, to extend throughout the state; in case of a county tax, to extend throughout the county; in case of a city tax, to extend throughout the city; and, in case of a town tax, to extend throughout the town. In other words, the rule of uniformity is not broken merely because a town or city or county raises a special tax for local purposes."

To come within the rule of uniformity, as thus defined, it is necessary, not only that the object of the appropriation in question should be public, but also that it should subserve the common interest and well-being of the people of the state.

There is another clause of the constitution, which declares:

"The legislature shall provide for an annual tax sufficient to defray the estimated expenses of the state for each year; and whenever the expenses of any year shall exceed the income, the legislature shall provide for levying a tax for the ensuing year, sufficient, with other sources of income, to pay the deficiency as well as the estimated expenses of such ensuing year." Sec. 5, art. VIII, Const.

Special stress was placed upon that provision in the *New Richmond Case,* 114 Wis. 578, 90 N. W. 1067. It was there said:

"To that language must be applied the well-known maxim, '*expressio unius est exclusio alterius.*' That construction limits such annual tax to an amount sufficient to defray such estimated expenses. . . . State taxes are thus only authorized to pay state expenses, or such expenditures as are authorized by the constitution."

The only reference to that provision of the constitution in the brief of counsel is in stating that that and other sections therein referred to "place limits on the power of the legislature to contract debts;" and from that we are asked to infer that the legislature is at liberty to give away the public moneys for objects concerning which it has no power to contract debts. While the provision quoted, like most of the provisions of the constitution, is affirmative in form, yet the manifest purpose is to limit the annual tax to an amount "sufficient to defray the estimated expenses of the state for each year." As held in the *New Richmond Case,* in order for an appropriation to be valid, it must be for a public purpose, and such as subserves the common interest and well-being of the people of the state. The act in question does neither. It was solemnly adjudged that ch. 203, Laws of 1895, was for the sole benefit of private parties and for private purposes. Counsel invoke the rule stated by Chief Justice Dixon, and quoted approvingly in the *New Richmond*

*Case,* wherein it is said: "Claims founded in equity and justice, in the largest sense of those terms, or in gratitude or charity, will support a tax." *Brodhead v. Milwaukee,* 19 Wis. 624; Cooley on Taxation, 127, 128; *State ex rel. New Richmond v. Davidson,* 114 Wis. 579, 90 N. W. 1067. That language was used with reference to the validity of an act of the legislature empowering the qualified electors of each town, city, or incorporated village to raise, by tax, money to pay bounties to volunteers who might enlist therefrom. The moral obligation of such municipality to pay such bounties to such volunteers was strong, and rested upon the parties required to pay, and was for an object confessedly public; and yet in that case it was expressly held:

"The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. . .. . The objects for which money is raised by taxation must be *public,* and such as subserve the common interest and well-being of the community required to contribute."

There was no intention, in the language quoted, to justify a tax for every claim which one private party may have against another private party, though "founded in equity and justice . . . or in gratitude or charity." Here, numerous private persons were treated, under ch. 203, Laws of 1895, for a disease, by certain private individuals or corporations, under the supposition that the respective counties where the inebriates lived would pay for such treatment an amount not exceeding $130 each. The court held the act to be void, and the county under no obligation to pay such private party for such private purpose. The only change in the situation is that such void claims have been transferred by such private parties to "innocent purchasers." Wherein they are any more innocent than the persons or corporations furnishing the treatment it is difficult to perceive. Certainly, such transfer did not change the private purpose into a pub-

lic purpose—much less did it make the claim which one private party had against another private party a claim founded in equity and justice, or in gratitude or charity, against the whole state. By ch. 203 the legislature only attempted to create claims against the counties. Notwithstanding the transfer, the claim still remains a private claim, founded upon a private transaction. The appropriation is less than the amount of the aggregate claims; but by its terms each claimant is to have a *pro rata* share. It is essentially an appropriation from the general fund to pay numerous private claims growing out of private transactions. All taxpayers of the state are interested in preserving the funds of the state from illegal diversion or spoliation. *State ex rel. Raymer v. Cunningham,* 82 Wis. 39, 51 N. W. 1133.

If the decisions of this court are to be followed, and have the significance above ascribed to them, then there would seem to be no escape from a condemnation of the enactment in question. Counsel for the relator seem to rely with great confidence upon the decision in *U. S. v. Realty Co.* 163 U. S. 427, where a claim was made for sugar bounty, under an act of March 2, 1895, 28 U. S. Stats. at Large, 933, appropriating money to certain persons who had incurred expense in the production of sugar on the faith and credit of certain acts of Congress passed five years before, the constitutionality of which had been questioned and the acts afterwards repealed. The court held:

"It is within the constitutional power of congress to determine whether claims upon the public treasury are founded upon moral and honorable obligations, and upon principles of right and justice; and having decided such questions in the affirmative, and having appropriated public money for the payment of such claims, its decision can *rarely, if ever,* be the subject of review by the judicial branch of the government."

It will be observed that the court had expressly declined to determine whether such prior acts of Congress were valid

or not; and that question never was determined.    163 U. S.
433, citing *Field v. Clark,* 143 U. S. 649.    If they were un-
constitutional, it was simply because Congress had exceeded
its powers upon a subject rightfully delegated to it.    The
opinion of the court in that case refers to no state adjudica-
tion, except *Town of Guilford v. Chenango Co.* 13 N. Y.
143, 146, 149; (163 U. S. 443.)    That case involved the
validity of an act of the legislature requiring the town to re-
imburse its officers for moneys expended by them in fruitless
litigation.    The court decided that the constitution contained
no clause prohibiting such an enactment.    On the contrary,
both opinions refer to the provisions of the constitution, then
in force, regulating the method of passing such enactments,
and, among others, one which declared that: "The assent of
two-thirds of the members elected to each branch of the legis-
lature shall be requisite to every bill appropriating the public
moneys or property *for local or private purposes."*    Sec. 9,
art. I, Const. N. Y. 1846.    And one of the opinions states
that such provisions were "not limitations of the absolute
power of the legislature over the public moneys, or of the
like power in the imposition of taxes, but rules prescrib-
ing the manner of its exercise."    And Judge DENIO said:
"There is no question but that this law received the requisite
vote."    In a later case in New York, that case was distin-
guished and limited, and the court held:

"The legislative power of taxation, at least as regards the
purposes for which it is to be exercised, is not without limit,
and it is within the province of the courts to examine and to
determine whether, in a particular case, the extreme bound-
ary of legislative power has been reached and passed.    It
must be made quite clear, however, that the legislature has
erred before the court can interfere with its action.    The
legislature has not power to authorize a municipal corpora-
tion to issue its obligations for the purpose of raising money
wherewith to pay a subscription of said corporation to the
capital stock of a private corporation, and to provide for the

payment of such obligations by taxation. It has not power to tax for private purposes solely." *Weismer v. Douglas,* 64 N. Y. 91.

Such distinctions are not referred to in the opinion of the court in *U. S. v. Realty Co.* 163 U. S. 427, notwithstanding the learned justice who wrote it had long been an honored member of the court of appeals of New York. Probably he deemed such distinctions immaterial to the decision of the case then in hand. Assuming that the decision in that case goes to the extent claimed for by it by counsel, and with great respect for the court from which it emanates, yet, in view of the provisions of our own constitution, and the decisions, cited, and the general trend of authority in this country, we should be unwilling to follow it.

*By the Court.*—The motion to quash the alternative writ of *mandamus* is granted, and the relation is dismissed.

Mr. Justice BARDEEN was present at the hearing of this case, and participated and concurred in the decision thereof, which was made December 30, 1902.

WINSLOW and DODGE, JJ., dissent.

A motion for a rehearing was denied May 29, 1903, SIEBECKER, J., taking no part.