Summers, J.
In 1904 the General Assembly passed an act entitled: “An act to provide relief for worthy' blind” (97 Ohio Laws, 392). The act provides that all male blind persons over the age of twenty-one years, and all female blind persons over the age of eighteen years, who have been residents of the state for five years, and of the county for one year, and have no property or means with which to support themselves, shall be entitled to and receive not more than twenty-five dollars per capita quarterly from the county treasury on warrant of the county auditor, authorized by the probate judge, and that under no condition or circumstance shall the beneficiary lose his or her benefits or residence by or through removal to any home or institution for the blind not maintained by said state or county.
The probate judge of Lucas county, proceeding under the act, authorized the auditor of that county, to issue a warrant on the treasurer for the payment of twenty-five dollars to the relator. The auditor refused, and thereupon the relator filed a petition in mandamus in the court of common *132 pleas of that county. The court of common pleas overruled a general demurrer to the petition and allowed a peremptory writ, and the circuit court affirmed.
The care of the state for its dependent classes is considered by all enlightened people as a measure of its civilization and it is not doubted that the legislation under consideration was inspired by beneficent if not enlightened motives. This state has provided institutions for the education of the blind; for feeble-minded youth; for honorably discharged soldiers, sailors and marines; a home for soldiers’ and sailors’ orphans; for the care and treatment of the insane; an asylum for epileptics and epileptic insane; a boys’ industrial school; a girls’ industrial home; for the establishment of homes of the friendless; a sanitarium for consumptives; and an institution for the treatment and education of deformed and crippled children. The object of these institutions is sufficiently indicated by their designation, and may be stated to be, generally, to provide places and means where their afflictions may be relieved, or where they may be taught and trained so that they may be self-supporting, or less likely to become a burden on the state, or where their physical wants may be supplied at the public expense. But it does not follow that it would be either wise or constitutional to select out a class, having some particular physical infirmity, and then confer a bounty upon individuals . of that class. If 'a bounty may be conferred upon individuals of one class, then it may be upon individuals of another class, and if upon two, then upon all. And if upon those who have physical infirm *133 ities, then why not upon other, classes who for various reasons may be unable to support themselves? And if these things may be done, why may not all property be distributed by the state?
The principal contention on the' part of the auditor is that the law is unconstitutional, because the purpose for which the public funds are appropriated is not public, and because Section 1 of Article VII, which provides, “Institutions for the benefit of the insane, blind, and deaf and dumb, shall always be fostered and supported by the state; and be subject to such regulations as may be prescribed by the General Assembly,” is a limitation upon the legislative power; and upon the part of the relator, that the act is within the legislative power, and, in the absence of a specific prohibition in the Constitution, is wholly within the discretion of the General Assembly, and that Section 1 of Article VII is an express grant of power and sufficiently broad to comprise the act in question.
Section 1 of Article II provides that the legislative power of this state shall be vested in a General Assembly. This comprises the power of taxation. But that extends only to the levying of taxes for the purpose of the state. Section 2 of the Bill of Rights declares that all political power is inherent in the people. Government is instituted for their equal protection and benefit. And Section 1 declares that the right of acquiring, possessing and protecting property is one of the inalienable rights of all men. And Section 19. provides that private property shall ever be held inviolate, but' subservient to the public Avelfare. So that the power of the state to take the prop *134 erty of its citizens by a tax is not broader than the purposes for which the state is formed, and so is not wholly within the discretion of the Legislature, but without express prohibition is subject to this inherent limitation that it may be exercised only for a public purpose.
This view of the law is supported by text-writers and by well-considered cases. Story on the Constitution, 699; Cooley’s Constitutional Limitations, 207; Black on Constitutional Law, 342; Judson on Taxation, 405; Gray on Limitations of Taxing Power, 123, and cases there cited.
Section 1 of Article VII, which provides that institutions for the benefit of the insane, blind, and deaf and dumb, shall always be fostered and supported by the state, is neither a grant nor a limitation of power, but a recognition of the fact that by enlightened people such classes are treated as wards of the state, and is an injunction upon the General Assembly to foster and support 'institutions for their benefit, and it is in obedience to this 'constitutional mandate that the General Assembly has provided for the institutions already enumerated.
The word “institution,” as used in the Constitution, had a popular if not a legal signification, as exemplified in the legislation above referred to, and if Section 1 of Article VII should be held to be a grant of power as well as a mandate, the act in question would not come within its terms.
The controlling question then is, whether the disbursement of the public funds provided by the act in question is for a public purpose.
No rule sufficiently definite, to be susceptible of certain application has been established. But in *135 the leading case, Loan Assn. v. Topeka, 20 Wallace, 655, where the constitutionality of an act of the Legislature of Kansas authorizing a municipality to issue and sell its bonds in aid of a manufacturing corporation was raised, Mr. Justice Miller says: “In deciding whether or not, in a given case, the object for which the taxes are assessed falls upon the one side or the other of this line, the courts must be governed mainly by the course and usage of the government,' the objects for which taxes have been customarily and by long course of legislation levied, what objects,and purposes have been considered necessary to the support and for the proper use of the government, whether state or municipal. Whatever lawfully pertains to this and is sanctioned by time and acquiescence of the people, may well be held to belong to the public use and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation.”
If that rule is applied here, it must be said that the act under consideration is without precedent in this state and that no provision is made in the act to insure the application of the money to the support of the individual, or to prevent him from becoming a public charge, or in any manner to control its use by him. .The act does not direct that the payments shall continue during the lifetime of the beneficiary, nor does it limit the time, nor provide that payments shall cease with the needs of the donee, or provide for any subsequent inquiry. It is an indeterminate gratuitous annuity, a gift pure and simple, and, being so, the Legislature is without authority to make it from the public funds. Other provisions of the act are open *136 to criticism, but as they go to the wisdom of the legislation rather than to the power to enact it, they will not be noticed.
It may be said that funds used for the care of the poor are used for a public purpose, and that moneys used under the provisions of this act will subserve a public purpose for the reason that they will enable many blind persons, aided by their own efforts or those of their friends, to support themselves, and thus to escape becoming a public charge. The wisdom of the legislation is not questioned; the power of the Legislature to so enact is the question presented here, and that an incidental public benefit is not sufficient to save the legislation has also been decided in the case just referred to.
In that case it was claimed that the benefit conferred on the commerce and industry of the town was a sufficient public benefit to warrant the imposition of the tax. Mr. Justice Miller said: “If it be said that a benefit results to the local public of a town by establishing manufactories, the same may be said of any other business or pursuit which employs capital or labor. The merchant, the mechanic, the innkeeper, the banker, the builder, the steamboat owner are equally promoters of the public good and equally deserving the aid of the citizens by enforced contributions. No line can be drawn in favor of the manufacturer which would not open the public treasury to the importunities of two-thirds of the busines men of a city or town.”
If the power of the Legislature to confer an annuity upon any class of needy citizens is admitted upon the ground that its tendency will be *137 to prevent them from becoming a public charge, then innumerable classes may clamor for similar bounties, and if not upon equally meritorious ground, still on ground that is valid in point of daw, and it is doubted that any line could be drawn short of an equal distribution of property.
A few of the many cases more or less illustrative of the application of the rule may be noticed. In Wisconsin Keeley Institute Co. v. Milwaukee County, 95 Wis., 153, an act requiring any county to pay out of the public moneys of the county to a private party not to exceed $170, for every inebriate found therein and treated upon the order and certificate of the county judge thereof, is declared unconstitutional. See also Putney Bros. Co. v. Milwaukee County, 108 Wis., 554; State, ex rel., v. Froehlich, 118 Wis., 129. In State, ex rel., v. Switzler, 143 Mo., 287, an act was held invalid that provided for the payment of certain sums of money in monthly installments to certain students while attending the state university, who were dependent on their own efforts for an education, and financially unable to otherwise obtain the same.

The judgments are reversed and petition dismissed.

Shauck, C. J., Price, Spear and Davis, JJ., concur.